# EDWARD ROSENFIELD *v.* ROGIN, NASSAU, CAPLAN, LASSMAN AND HIRTLE, LLC
## (AC 20758)

Schaller, Spear and Daly, Js.

Argued May 9, 2001—officially released April 16, 2002

*A. Alan Sheffy,* for the appellant (plaintiff).

*Jeffrey L. Ment,* for the appellee (defendant).

*Opinion*

SPEAR, J. In this legal malpractice action, the plaintiff, Edward Rosenfield, claims that the defendant law firm, Rogin, Nassau, Caplan, Lassman & Hirtle, LLC (defendant), failed to file in a timely manner a legal malpractice action on his behalf against his former attorney. The trial court rendered a summary judgment in favor of the defendant, and the plaintiff appealed, claiming that the court improperly concluded that (1) the collateral estoppel doctrine did not apply and (2) the continuing course of conduct and continuous representation doctrines tolled the statute of limitations in the underlying legal malpractice action. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The initial legal malpractice action arose out of a foreclosure matter in which Levy & Droney, P.C. (Levy), represented the plaintiff. See *Rosenfield* v. *Cymbala,* Superior Court, judicial district of Middlesex, Docket No. 060180 (December 18, 1992). In that foreclosure action, the court, *Higgins, J.,* orally rendered a judgment of dismissal on December 1, 1992, and issued a written memorandum of decision on December 18, 1992. Levy appealed from the judgment of dismissal on behalf of the plaintiff, and we affirmed the judgment in a per curiam opinion. *Rosenfield* v. *Cymbala,* 33 Conn. App. 931, 636 A.2d 881 (1994).

Following our decision, Levy brought a second foreclosure action on the plaintiff's behalf, which resulted in a summary judgment in favor of the foreclosure

defendant based on the doctrine of res judicata. *Rosenfield* v. *Cymbala,* Superior Court, judicial district of Middlesex, Docket No. CV 940072816 (August 23, 1995). Levy again filed an appeal, but before we decided the case, the plaintiff retained the defendant to bring a malpractice action against Levy for negligence in handling the foreclosure action. We subsequently affirmed the court's judgment. *Rosenfield* v. *Cymbala,* 43 Conn. App. 83, 681 A.2d 999 (1996).

The defendant served a complaint on Levy on December 15, 1995. In September, 1996, the law firm Marder & Kallet filed an appearance on the plaintiff's behalf in lieu of the defendant in this action. Levy subsequently filed a motion for summary judgment, alleging that the action was barred by the statute of limitations set forth in General Statutes § 52-577.[1] Levy claimed that the complaint served on December 15, 1995, was untimely because the three year statute of limitations had begun to run on the date of the court's oral decision on December 1, 1992. Marder & Kallet argued that the filing was timely because the statute of limitations had begun to run when the memorandum of decision was issued on December 18, 1992. The court, *Wagner, J.,* agreed with Levy and rendered a summary judgment in its favor. *Rosenfield* v. *Levy & Droney, P.C.,* Superior Court, judicial district of Hartford, Docket No. CV 960556791S (April 16, 1997). No appeal was taken from Judge Wagner's decision.[2]

The present legal malpractice action arose from the defendant's alleged failure to file the action against Levy

[1] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[2] The court noted that the plaintiff had brought a second legal malpractice claim against Levy in the judicial district of Hartford, Docket No. CV 990592695, which currently is pending. The second legal malpractice action against Levy was commenced by service of process on September 3, 1999.

in a timely manner. The defendant filed a motion for summary judgment, claiming that, notwithstanding Judge Wagner's ruling, it had filed the complaint in a timely manner. The defendant argued that the legal representation of the plaintiff continued through the first appeal, which tolled the statute of limitations until at least February 1, 1994, the date we affirmed the first judgment of dismissal of the foreclosure action. *Rosenfield* v. *Cymbala*, supra, 33 Conn. App. 931–32. The defendant argued that the complaint served on December 15, 1995, therefore, was timely. The court, *Peck, J.*, agreed and rendered a summary judgment in the defendant's favor. This appeal followed.

I

The plaintiff claims that the court improperly concluded that the collateral estoppel doctrine did not preclude the defendant from relitigating the issue of the tolling of the statute of limitations. Specifically, the plaintiff argues that Judge Peck was barred from reconsidering Judge Wagner's ruling that the defendant's filing of the complaint was untimely because the three year statute of limitations contained in § 52-577 had begun to run from the date of Judge Higgins' oral decision on December 1, 1992. The plaintiff argues that the court improperly considered the tolling issue and cited case law regarding the continuous course of conduct doctrine. We are unpersuaded.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must

be identical to those considered in the prior proceeding. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; internal quotation marks omitted.) *Pitchell* v. *Williams*, 55 Conn. App. 571, 577–78, 739 A.2d 726 (1999), cert. denied, 252 Conn. 925, 746 A.2d 789 (2000).

We conclude that the court properly ruled that the tolling claim was not barred by the collateral estoppel doctrine. The defendant here was neither a party nor in privity with a party to the cause of action determined by Judge Wagner and, therefore, Judge Peck was not precluded from addressing the tolling issue. See *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 814, 695 A.2d 1010 (1997) (collateral estoppel to be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights). Moreover, the plaintiff failed to present any evidence that the continuing course of conduct and continuous representation doctrines or any other tolling issue was in the pleadings or otherwise litigated before Judge Wagner. Furthermore, Judge Wagner did not cite cases involving the continuing course of conduct doctrine for the proposition that the doctrine did not apply, but rather for the definition of "act or omission" under § 52-577. Judge Peck, therefore, was not precluded from considering whether there was a genuine issue of material fact as to whether the continuing course of conduct

or continuous representation doctrine applied to toll the statute of limitations.

The plaintiff argues that permitting the consideration of the tolling issue would "directly fly against the underlying judicial policy that favors judicial economy, the stability of former judgments and finality, and would prejudice the plaintiff by preventing [him] from seeking a remedy altogether." We disagree.

Our conclusion is consistent with the collateral estoppel doctrine and the underlying policy of the doctrine. Furthermore, the plaintiff is not prejudiced. He failed to meet his burden of proving that the defendant failed to file the cause of action against Levy in a timely manner.

## II

The plaintiff next claims that the court improperly concluded that there was no genuine issue of material fact that the continuing course of conduct and continuous representation doctrines tolled the statute of limitations in the underlying legal malpractice action. Specifically, the plaintiff argues that the continuing course of conduct and continuous representation doctrines never have been recognized or applied in Connecticut in the legal malpractice context. After outlining our standard of review and the law of the underlying claim, we shall discuss the applicability of each doctrine separately.

"[T]he scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is

a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.) *Richter* v. *Danbury Hospital*, 60 Conn. App. 280, 286, 759 A.2d 106 (2000).

"Practice Book § 17-49 . . . requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citations omitted; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).

"In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . . To prove causation and damages here the plaintiff must establish that the defendants' failure to file an action

. . . within the statute of limitations period caused him harm because his . . . action is now time barred." (Citation omitted.) *Mayer* v. *Biafore, Florek & O'Neill,* 245 Conn. 88, 92, 713 A.2d 1267 (1998).

The plaintiff's legal malpractice action against the defendant alleges that (1) there was an attorney-client relationship between the plaintiff and the defendant, (2) the defendant failed to file the malpractice action against Levy in a timely manner, (3) as a result of the defendant's negligence, such action was barred by § 52-577, and (4) the plaintiff suffered financial losses and damages that he would have recovered from Levy. Furthermore, the plaintiff argues that the fact that Judge Wagner dismissed the underlying action against Levy as being untimely supports his allegations.

The issue is whether the defendant failed to file the legal malpractice action against Levy in a timely manner or if either the continuing course of conduct or continuous representation doctrine applied to the underlying legal malpractice action against Levy to toll the statute of limitations.

The underlying legal malpractice action that the defendant allegedly failed to file in a timely manner was based on a claim of negligence, which was subject to § 52-577. See *Sanborn* v. *Greenwald,* 39 Conn. App. 289, 301–302, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). Section 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. Our Supreme Court stated in *Fichera* v. *Mine Hill Corporation,* 207 Conn. 204, 212, 541 A.2d 472 (1988): In construing our general tort statute of limitations, General Statutes § 52-

577, which allows for an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." (Internal quotation marks omitted.) *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn. App. 786, 790–91, 631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Collum* v. *Chapin*, 40 Conn. App. 449, 451, 671 A.2d 1329 (1996).

"Section 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." (Internal quotation marks omitted.) *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 301–302. Our Supreme Court has recognized that the repose section of General Statutes § 52-584 "may be tolled under the continuous treatment or the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994). The trial court based its decision on both the continuing course of conduct and the continuous representation doctrines.

A

Continuing Course of Conduct Doctrine

The plaintiff claims that the court improperly concluded that the continuing course of conduct doctrine tolled the statute of limitations in the underlying legal

malpractice action. Specifically, he argues that the continuing course of conduct doctrine never has been adopted by an appellate court in this state. Since oral arguments, this court applied the continuing course of conduct doctrine to toll the statute of limitation in a legal malpractice action. *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 832–36, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). We conclude, therefore, that the continuing course of conduct doctrine applies to legal malpractice actions. We must, however, consider whether the court here properly applied the doctrine.

"[W]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . The continuing course of conduct doctrine is conspicuously fact-bound. . . .

"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . [T]he doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission

that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . . .

"In sum, a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . . Second, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . [T]hat continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." (Citations omitted; internal quotation marks omitted.) Id., 833–35.

We conclude that the court here improperly applied the continuing course of conduct doctrine to the underlying legal malpractice action, which the plaintiff claimed the defendant failed to file in a timely manner. Although the plaintiff satisfied the first prong by alleging in his complaint that Levy negligently prepared and presented the plaintiff's evidence at trial, he failed to satisfy the second prong, which requires consideration of whether there was a genuine issue of material fact with regard to whether Levy owed a continuing duty to the plaintiff related to the initial wrong. The plaintiff and Levy had a fiduciary relationship. "The relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith." (Internal quotation marks omitted.) *Matza* v. *Matza*, 226 Conn. 166, 184, 627 A.2d 414 (1993). In determining whether there was a special relationship, we evaluate whether Levy initiated and engaged in any affirmative conduct after the initial wrong, which includes making promises after the initial wrong or promises to do anything additional in the future, had a

fiduciary or contractual relationship with the plaintiff or committed fraud. *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 297. Because of Levy's fiduciary relationship with the plaintiff, he had a duty to prepare and present the plaintiff's evidence properly at trial. See Rules of Professional Conduct 1.1. The duty to prepare and present evidence, however, is not a continuing duty that relates to the initial wrong. The breach of that duty *is* the initial wrong. There was no allegation against Levy of subsequent wrongful conduct *related to* the initial wrong. Accordingly, the second prong of the continuing course of conduct test was not satisfied. We conclude, therefore, that the court improperly applied the continuing course of conduct doctrine to the underlying legal malpractice action. The court, however, alternatively concluded that the continuous representation doctrine applied to toll the statute of limitations in the underlying legal malpractice action.

B

Continuous Representation Doctrine

The plaintiff next claims that the court improperly concluded that there was no genuine issue of material fact that the continuous representation doctrine tolled the statute of limitations in the underlying legal malpractice action. Specifically, the plaintiff argues that the continuous representation doctrine has never been recognized or applied in Connecticut in the legal malpractice context. We agree that the continuous representation doctrine never has been applied to legal malpractice actions; however, it was considered and rejected by this court in *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, supra, 32 Conn. App. 793.

"In other jurisdictions, the 'continuous representation rule' has been defined as follows: it 'tolls the statute of limitations or defers accrual of the cause of action

while the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts.' " Id., 791.

The continuous representation doctrine in application is similar to our continuous treatment doctrine. "The continuous treatment doctrine was first recognized in a medical malpractice context in *Giambozi* v. *Peters*, [127 Conn. 380, 16 A.2d 833 (1940), overruled in part on other grounds, *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966)]. [Our Supreme Court] stated in *Giambozi* that [t]he term malpractice itself may be applied to a single act of a physician or surgeon or, again, to a course of treatment. The Statute of Limitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated." (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 274.

There is a marked resemblance between the continuous treatment of a patient's condition by a physician and the continuous representation of a client by an attorney. See *Siegel* v. *Kranis*, 29 App. Div. 2d 477, 480, 288 N.Y.S.2d 831 (1968). In both situations, the relationship between the parties is demarcated by the fiduciary relationship of trust and confidence, which continues to develop as the service is provided. Id. The recipient of the medical or legal service is disadvantaged in that the patient does not have the expertise to question the treatment of the physician, and, likewise, a client does not have the expertise to question the tactics and performance of an attorney. Id. The term "continuous treatment" in the context of legal malpractice, however, is inappropriate because an attorney does not "treat" a client's legal disputes, but rather

"represents" a client in such disputes. Therefore, the phrase "continuous representation" is more appropriate in legal malpractice actions.

The policy underpinning the continuous representation doctrine is similar to the policy underlying the continuing course of conduct doctrine, which this court recently applied in the legal malpractice context in *Giulietti* v. *Giulietti,* supra, 65 Conn. App. 832–36. Here, Judge Peck ruled that the continuous representation doctrine "reflects a policy of preserving the attorney-client relationship and enabling the attorney to *correct, avoid or mitigate the consequences of an apparent error* . . . . The application of the rule to specific facts should be based on whether any of these purposes is furthered. 2 R. Mallen & J. Smith, Legal Malpractice (4th Ed. 1996) § 21.12, p. 815." (Emphasis added; internal quotation marks omitted.) That policy underlying the continuing representation doctrine is similar to the policy underlying the continuing course of conduct doctrine in that during "an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and *may yet be remedied.*" (Emphasis added.) *Blanchette* v. *Barrett,* supra, 229 Conn. 276.

Here, the court stated that "[a]doption of the [continuous representation rule] was a direct reaction to the illogical requirement of the occurrence rule, which compels clients to sue their attorneys although the relationship continues and there has not been and may never be any injury. The rule, limited to the context of continuous representation, also is consistent with the purpose of the statute of limitations, which is to prevent stale claims and enable the defendant to preserve evidence. When the attorney continues to represent the client in the subject matter in which the error occurred, all such objectives are achieved and preserved. The attorney-client relationship is maintained and speculative mal-

practice litigation is avoided." (Internal quotation marks omitted.)

We conclude that we should adopt the continuous representation doctrine for several reasons. First, we already permit tolling of the statute of limitations under the continuing course of conduct and continuous treatment doctrines, which are very similar in policy and application to the continuous representation doctrine. Second, to require a client to bring an action before the attorney-client relationship terminates would encourage the client constantly to second-guess the attorney and force the client to obtain other legal opinions on the attorney's handling of the case. Nothing could be more destructive of the attorney-client relationship, which we strive to preserve. Third, requiring a client to bring a malpractice action against the attorney during the pendency of an appeal from the judgment in an underlying action in which that attorney allegedly committed malpractice could force the client into adopting inherently different litigation postures and thereby compromise the likelihood of success in both proceedings because the client would be defending the attorney's actions in the appeal and contesting the attorney's actions in the malpractice action. *Hughes* v. *Mahaney & Higgins*, 821 S.W.2d 154, 156–57 (Tex. 1991). Fourth, the policy underlying the statute of limitations is upheld because the conduct that is the subject of legal malpractice actions is generally memorialized in court pleadings or in hearing transcripts and, thus, the dangers associated with delay are lessened. *AMFAC Distribution Corp.* v. *Miller*, 138 Ariz. 155, 158, 673 P.2d 795 (App.), aff'd, 138 Ariz. 152, 673 P.2d 792 (1983) (en banc). Fifth, adoption of the continuous representation doctrine would prevent an attorney from postponing the inevitable event of defeat beyond the statute of limitations period to protect himself from liability for his actions. See *Siegel* v. *Kranis*, supra, 29 App. Div.

2d 480. Ultimately, the tolling period would help to prevent disruption of the attorney-client relationship yet still protect the client's right to bring an action against the attorney for negligence while at the same time allowing the allegedly negligent attorney to correct or minimize the error. We conclude that the continuous representation doctrine may apply to toll the statute of limitations in a legal malpractice action.[3]

In light of our conclusion, we must further determine whether the court here properly applied the continuous representation doctrine to the underlying legal malpractice action that the plaintiff claimed the defendant failed to file in a timely manner. For the continuous representation doctrine to apply to a legal malpractice action and to operate to toll the statute of limitations, the client must show that (1) the attorney continued to represent him and (2) the representation related to the same transaction or subject matter as the allegedly negligent acts. *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, supra, 32 Conn. App. 791.

Both of those requirements are met in the underlying legal malpractice action here. The defendant filed the legal malpractice action on behalf of the plaintiff against Levy on December 15, 1995. As we already have noted, there is no question that Levy continued to represent the plaintiff through at least January 31, 1994, a date

---

[3] We do not have to determine whether the statute of limitations was tolled until all appeals on the underlying claim are exhausted; *AMFAC Distribution Corp.* v. *Miller*, supra, 138 Ariz. 156; *Semenza* v. *Nevada Medical Liability Ins. Co.*, 765 P.2d 184, 185 (Nev. 1988); *Stephens* v. *General Motors Corp.*, 905 P.2d 797, 799 (Okla. 1995); *Hughes* v. *Mahaney & Higgins*, supra, 821 S.W.2d 157; or until the representation ends. See, e.g., *Blanchette* v. *Barrett*, supra, 229 Conn. 274–75. Levy still represented the plaintiff at least through January 31, 1994, the day before we decided the first appeal. *Rosenfield* v. *Cymbala*, supra, 33 Conn. App. 931. That date is well within the three year statute of limitations, as the action in question, filed by the defendant, was commenced on December 15, 1995.

well within the statute of limitations. See footnote 3. There also is no question that the representation was on the very same case in which the plaintiff claims the malpractice occurred. We conclude therefore that the court properly applied the continuous representation doctrine to the underlying legal malpractice action and found a timely filing.

The judgment is affirmed.

In this opinion the other judges concurred.