KALTMAN–GLASEL

v.

DOOLEY et al.

No. 3:01CV68 (JBA).

United States District Court,
D. Connecticut.

Oct. 18, 2002.

See, also, 156 F. Supp.2d 225.

John R. Williams, Dawne Westbrook, Williams & Pattis, New Haven, CT, for plaintiff.

Patrick M. Noonan, Brock Thomas Dubin, Bruce P. Matzkin, Delaney, Zemetis, Donahue, Durham & Noonan, Guilford, CT, for defendants.

### Ruling on Defendants' Motion for Summary Judgment [Doc. # 36]

ARTERTON, District Judge.

Alice Kaltman–Glasel commenced this legal malpractice diversity action against Shipman & Goodwin LLP, a Connecticut law firm, and two of its attorneys, Francis M. Dooley and Stuyvesant K. Bearns, claiming that defendants failed to meet *minimum standards of professional care* when they represented her from 1981 to 1999 in various financial and business transactions. She alleges specifically that although defendants knew that her ex-husband, Kenneth Kaltman, failed to make payments on demand notes he had executed in her favor, they failed to advise her to attempt to collect the notes within the applicable statute of limitations period. She also claims that defendants engaged in a pattern of simultaneously representing both her and her adversaries. Finally, she claims that while defendants represented her mother (who they allegedly knew was not of sound mind), they caused a twenty-foot strip of land to be annexed to plaintiff's adjoining piece of land, resulting in plaintiff's loss of the right to maintain a nonconforming use of the property.

For the reasons set out below, defendants' motion for summary judgment is granted.[1]

1. The Court accepts, over plaintiff's objection, defendants' untimely-filed Local R. 9(c)(1) Statement, and thus the Court will not summarily deny the motion for summary judgment as requested by plaintiff. After full review of the papers, the Court discerns no prejudice to plaintiff from this untimely filing and sees no benefit in requiring the parties to re-file the motion and all papers in support of and opposition to the motion. *Cf.* Fed. R.Civ.P. 1 (rules to be "construed and admin-

## I. Summary Judgment Standard

### A. General Standard

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Parker v. Sony Pictures Entm't, Inc.,* 260 F.3d 100, 111 (2d Cir.2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.' ") (*quoting Celotex,* 477 U.S. at 324, 106 S.Ct. 2548); *Gallo v. Prudential Residential Servs., Ltd. Pshp.,* 22 F.3d 1219, 1223–1224 (2d Cir.1994) ("the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case") (citations omitted).

The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("there is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.") (citation and internal quotation omitted). In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. *Id.* However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed.R.Civ.P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. *Matsushita Elec.,* 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted).

### B. Verified Complaint

In this case, plaintiff's only evidence in opposition to defendants' motion for summary judgment is her verified complaint, at the bottom of which appears the following sworn and duly notarized statement signed by Kaltman–Glasel: "I have read the foregoing Complaint and the allegations thereof are true to the best of my knowledge, information and belief." Compl. at 6. Inasmuch as Kaltman–Glasel's verification is "the equivalent of the oath that would be given with respect to an affidavit," she "is entitled to rely on it in opposing summary judgment." *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001).

As plaintiff's sworn statements are equivalent to statements made in an affidavit, *id.,* they are subject to the normal rules governing affidavits submitted in support of or in opposition to a motion for

istered to secure the just, speedy and inexpensive determination of every action'').

summary judgment. Thus, they must be based on personal knowledge, Fed. R.Civ.P. 56(e), they must be more than "unsupported allegations" (which cannot create a material issue of fact), *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir.2000) (citations omitted), and they cannot contradict the affiant's deposition testimony, *Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir.1999) (citation omitted).

## II. Analysis

■ "[T]he plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." *Mayer v. Biafore, Florek and O'Neill*, 245 Conn. 88, 92, 713 A.2d 1267 (1998) (*citing* 4 R. Mallen & J. Smith, Legal Malpractice (4th ed.1996) § 32.9 at 172–74). The second element of this claim, a wrongful act or omission, is "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." *Davis v. Margolis*, 215 Conn. 408, 415, 576 A.2d 489 (1990) (legal malpractice) (*citing, inter alia, Barnes v. Schlein*, 192 Conn. 732, 735, 473 A.2d 1221 (1984) (medical malpractice)) (internal quotations omitted). The burden of proving that a defendant has breached this professional duty is always on the plaintiff. *Snyder v. Pantaleo*, 143 Conn. 290, 294, 122 A.2d 21 (1956) (medical malpractice); *Bennett v. Lindsay*, No. 389401, 1999 WL 512672 (Conn.Super. July 6, 1999) (legal malpractice).

A plaintiff cannot prevail on a legal malpractice claim under Connecticut law unless either (1) she presents expert testimony establishing the professional standard of care, or (2) "there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson." *Davis v. Margolis*, 215 Conn. 408, 416 & 416 n. 6, 576 A.2d 489 (1990) (citations and internal quotations omitted); *accord Paul v. Gordon*, 58 Conn.App. 724, 727–728, 754 A.2d 851 (2000). Thus, on those issues upon which her expert report does not opine, plaintiff cannot prevail on summary judgment unless a reasonable jury could find the requisite substantive standard of clear neglect. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits").

### A. Demand Notes

■ Kenneth Kaltman executed several demand notes in Kaltman–Glasel's favor. Attorney Dooley advised her that she should not pursue collection efforts on these notes until such time as she had sufficient funds to ascertain Kaltman's assets. *See* Kaltman–Glasel Dep. at 128[2]; *see also* Dooley Aff. ¶ 2 ("I advised Ms. Kaltman–Glasel that before initiating litigation to collect on the notes, she should first hire a private investigator to locate Mr. Kaltman's assets, in order to determine whether he had any assets which could be used to satisfy the debt."). Because no collection effort was made within ten years from the issue date of any of the

---

**2.** *See also id.* at 23 ("Q: In other words, what he told you was it would be a waste of time to get a judgment if you didn't know where the assets were so you could realize the judgment? A: Yes.").

notes,[3] Kaltman–Glasel is now barred from enforcing the notes. *See* Conn. Gen.Stat. § 42a–3–118(b) ("an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years"). She claims that Attorney Dooley's advice constituted legal malpractice.

### 1. Statute of Limitations

This claim is time-barred. Because the last note was issued on March 29, 1987, *see* [Doc. # 37 Ex. B], Kaltman–Glasel could not have made any claim on the notes after March 29, 1997 (ten years later). Any alleged malpractice claim would have thus accrued, at the latest, by March 29, 1997. (Any advice given after March 29, 1997, could not have been the cause of any loss because the notes would already have been time-barred.) This suit was not filed until January 16, 2001—more than three years after the last possible date of malpractice. Inasmuch as the statute of limitations for such tort actions in Connecticut is three years, Conn. Gen.Stat. § 52–577, this action is time-barred absent some form of tolling.

■ Kaltman–Glasel claims that the statute of limitations for defendants' alleged malpractice should be tolled due to defendants' alleged fraudulent concealment and their continuous representation of her. Neither claim has merit. In Connecticut, a plaintiff relying on the fraudulent concealment exception to a statute of limitations defense has the burden of proving by "clear, precise, and unequivocal evidence": (1) defendant's actual awareness, not imputed knowledge, of the facts necessary to establish the plaintiff's cause of action; (2) defendant's intentional concealment of these facts from the plaintiff; and (3) defendant's concealment of the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on her cause of action. *Bartone v. Robert L. Day Co., Inc.,* 232 Conn. 527, 533, 656 A.2d 221 (1995) (citations omitted). "The defendants' actions must have been directed to the very point of obtaining the delay in filing the action of which they afterward seek to take advantage by pleading the statute." *Bound Brook Ass'n v. Norwalk,* 198 Conn. 660, 666, 504 A.2d 1047 (1986) (citations and internal quotations omitted).

Plaintiff's only evidence of fraudulent concealment is a conclusory allegation in the verified complaint that apparently applies to all allegations in the complaint:

> The defendants had a fiduciary obligation to disclose the aforesaid malpractice and conflicts of interest to the plaintiff, as well as to avoid them, but the defendants did not make such disclosures until less than three years prior to the date of this action, if at all. As a result, the plaintiff did not learn that she had this cause of action until less than two years ago.

Compl. ¶ 7. This claimed "evidence" is far from clear, precise or unequivocal; it is conclusory, unsupported and wholly fails to create a genuine issue of material fact.

■ Plaintiff's continuous representation claim is similarly unavailing. "For the continuous representation doctrine to apply to a legal malpractice action and to operate to toll the statute of limitations, the client must show that (1) the attorney continued to represent [her] and (2) the representation related to the same transaction or subject matter as the allegedly negligent acts." *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC,* 69 Conn.App. 151, 166, 795 A.2d 572 (2002) (*citing S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan & King,*

---

3. *See* Kaltman–Glasel Dep. at 38.

*P.C.*, 32 Conn.App. 786, 791, 631 A.2d 340 (1993)). While the verified complaint claims that defendants represented Kaltman–Glasel "until at least April 5, 1999," Compl. ¶ 5, that date is not relevant as the operative date for these purposes is when one of the defendants last represented her with regard to these notes. *See Rosenfield*, 69 Conn.App. at 166, 795 A.2d 572. The only evidence in the record in this regard is the following testimony:

> A: * * * Attorney Dooley stated that I would have to wait until such a time that I had enough funds to track Ken Kaltman's assets.
>
> Q: And when was this conversation you had?
>
> A: This conversation took place several times over a period of years.
>
> Q: Do you remember when the first time was?
>
> A: Probably in 1995.
>
> Q: And why were you able to place it in 1995? * * *
>
> A: My husband left in 1995.
>
> \* \* \* \* \* \*
>
> Q: And when was the last time you talked with Attorney Dooley about the notes where he said you really ought to wait until you are able to track his assets before filing suit?
>
> A: I don't want to guess on that. I think I have written documentation as to when that took place.
>
> Q: Do you know where the documentation is?
>
> A: Yes. I have some journals that you requested and I'm planning to get those journals to you.

Kaltman–Glasel Dep. at 128–129.

Inasmuch as this imprecise guess of "a period of years" after "probably . . . 1995"

is the only evidence in the record regarding whether one of the defendants gave Kaltman–Glasel advice about the notes at some point on or before January 16, 1998 (three years before this action was commenced),[4] defendants are entitled to summary judgment because no reasonable jury could find, based on this evidence alone, that plaintiff has proven a continuous course of representation regarding the notes through January 16, 1998. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

### 2.   Merits

■   Alternatively, even if the claim were not time-barred and assuming *arguendo* that Attorney Dooley's advice not to pursue collection efforts or make a demand on the notes fell below minimally accepted professional standards, there is insufficient evidence in the record from which a jury could conclude that this advice caused Kaltman–Glasel any damages, because there is no competent evidence in the record that Ken Kaltman has or ever had sufficient funds to pay the notes or a judgment.

The verified complaint alleges that Kenneth Kaltman "had or could acquire sufficient assets to pay all or a significant portion of the said notes . . . ." Compl. ¶ 6A. However, no basis is given for this allegation, and Kaltman–Glasel (whose "affidavit" the verified complaint is considered) affirmatively disclaimed any knowledge of Ken Kaltman's finances at her deposition:

---

**4.**  The "documentation" to which Kaltman–Glasel refers was never made part of the summary judgment record, nor is there any

other indication in the record that such documentation exists.

Q: And did you ever learn whether or not those business that Lon Moot told you that Ken was involved in—did you ever learn whether there were any assets in those businesses?

A: I did not.

Q: So as of the present time, you don't know whether Ken Kaltman in fact ever had assets that you could have pursued or not; is that a fair statement?

A: I don't know.

Kaltman–Glasel Dep. at 25. The only indication that Ken Kaltman had any assets is the following unsupported hearsay:

Q: And did you ever talk with the FBI or the State Police about your husband's assets?

A: I talked with the State Police about my husband's assets.

Q: And what did they tell you?

A: They told me that they had him recorded saying that he had five to ten million dollars just to play with. They found multiple bank accounts in his name and they found multiple businesses in his girlfriend's name.

Q: Did they, aside from your ex-husband's statements about his assets to the State Police, did the State Police indicate they found any dollar value to these bank accounts and businesses?.

A: Yes, they did.

Q: And what was the dollar value?

A: They didn't disclose that.

Kaltman–Glasel Dep. at 135–136.

Because damages are an element of a malpractice action, Kaltman–Glasel's claim must necessarily fail because there is no competent[5] evidence in the record from which a jury could conclude that in the absence of the allegedly flawed advice from Attorney Dooley, Kaltman–Glasel would ever have recovered any money from Kenneth Kaltman on the notes.

**B. The October 1998 Sale of Sugar Hill**

Kaltman–Glasel next claims that defendants represented both her as seller and the buyers of her home in October 1998, and asserts that as a result of the conflict "and other aspects of the negotiation and sale," Compl. ¶ 6B, the house sold for only $1.55 million when its true value was between $2.4 and $6 million. These "other aspects" are not specified in the complaint, but apparently concern the existence of a second offer to purchase the home for $1.6 million by prospective buyers Brian and Jennifer Quinn. *See* Kaltman–Glasel Dep. at 47–48 (alluding to another offer); Dooley Aff. Ex. 1 (written offer to purchase home for $1.6 million).[6]

**1. Dual Representation**

While the verified complaint alleges that the defendants represented the buyer, Compl. ¶ 6(B), Kaltman–Glasel's own deposition testimony is to the contrary, inasmuch as she testified that it was Attorney Manasse, and not an attorney at Shipman & Goodwin, who represented the buyer, and that Raveis Realty was the buyer's real estate broker. Kaltman–Glasel Dep. at 43, 143, 150. Moreover, Dooley avers that he turned down the buyer's spouse's request for representation be-

---

5. Hearsay evidence may be used to defeat summary judgment only upon "a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985). As in *Burlington*, there has been no such showing here.

6. Plaintiff's opposition to defendants' motion for summary judgment addresses only the claim of dual representation. *See* [Doc. # 47] at 9 (while the argument addresses the allegedly lower selling price, this is prefaced with a reference to the claimed dual representation as the cause of the lower sale price).

cause he was already representing Kaltman–Glasel in other matters, and avers that he referred the buyer's spouse to Attorney William Manasse. Dooley Aff. ¶ 3. Manasse, in turn, swears that he "represented [the buyer] in connection with her purchase of property" from Kaltman–Glasel, and that to his knowledge, neither defendant Dooley nor anyone at Shipman & Goodwin represented the buyer or her spouse "in any aspect of the transaction." Manasse Aff. ¶¶ 3–4. Because Kaltman–Glasel cannot create a genuine issue of material fact by contradicting her own deposition testimony, and in light of the other, uncontradicted evidence in the record that no defendant represented the buyer of Kaltman–Glasel's property, there is no issue of fact left for trial on plaintiff's dual representation claim.[7]

### 2. Depressed Sale Price

■ Any claim related to the allegedly depressed purchase price, to the extent it is claimed as independent from the alleged dual representation, see supra note 6, also fails as a matter of law. While the verified complaint asserts that the "true value" of the property was between $2.4 and $6 million, Kaltman–Glasel specifically disclaimed any knowledge of the property's true value in her deposition testimony:

Q: What do you think the house was worth in October, 1998?

A: I was told the house was worth $6 million.

Q: And who told you that?

A: Seymour Surmow.

Q: And you, yourself, don't—I take it you don't have an actual opinion in terms of market value; you're just relying on Seymour Surmow's advice, is that right?

A: I'm not a qualified real estate appraiser.

Q: * * * My question is: Do you have a different opinion apart from what they told you?

A: It was my family home and I loved living there. So to me it had no monetary value. It—it was home.

Kaltman–Glasel Dep. at 48–49. The reference to a $6 million appraisal is hearsay, and no competent evidence of any appraisal is in the record, and there is no indication that admissible evidence of an appraisal is forthcoming for trial. See supra note 5.

Although plaintiff's opposition brief correctly notes that under Connecticut law a property owner is entitled to testify as to the value of her property, see, e.g., Misisco v. La Maita, 150 Conn. 680, 684, 192 A.2d 891 (1963), the verified complaint provides no evidence of the property's value because Kaltman–Glasel specifically disclaimed any knowledge of that value at her deposition. Moreover, Kaltman–Glasel's deposition testimony was given after she signed the verified complaint, so it cannot be argued that the verified complaint clarifies or explains her deposition testimony.

Thus, the only competent evidence in the record as to the property's value are the two offers at issue here: one for $1.55

---

7. Plaintiff's expert report is unavailing because it is based on the assumption that the buyer and seller are being represented by the same attorney. See [Doc. # 37 Ex. C] at 2. Additionally, inasmuch as the dual representation claim is predicated on Kaltman–Glasel's assertion that defendants represented both the buyer and the seller, this claim is defeated by showing there is no genuine issue of material fact as to the representation of only one of the parties. The Court does not address defendants' contention that no factual dispute remains as to defendants' representation of Kaltman–Glasel as seller.

million and the other for $1.6 million.[8] While Kaltman–Glasel faults Dooley for advising her to accept the lower offer rather than the higher offer, the sequence of events and the terms of the offers explain this advice:

On or about August 31, 1998, I received [the $1.6 million offer]. The [$1.55 million] offer expired at midnight on August 31, 1998. [The $1.6 million] offer contained a "back-out clause," allowing [the offeror] seven days from the date of acceptance of his offer to rescind the contract. I advised Ms. Kaltman–Glasel to accept the ... offer of $1.55 million, rather than the [$1.6 million] offer, because if the [$1.55 million] offer expired and was not renewed and [the $1.6 million offeror] exercised his right to rescind his offer, Ms. Kaltman–Glasel would have been left with no purchaser at all, in which case the house would have been sold at foreclosure, almost certainly for far less than $1.55 million.

Dooley Aff. ¶ 5.

Kaltman–Glasel has no evidence to rebut the logic of this advice, and her expert report does not even address this issue. With this as the only evidence in the record, no jury could conclude that Attorney Dooley's advice to accept the slightly-lower offer rather than risk a much lower sale price in foreclosure constituted malpractice. While Kaltman–Glasel complains bitterly in her deposition about having to part with the property at all and the process of conveying the property, *see, e.g.,* Kaltman–Glasel Dep. at 149 (asserting that she "was forced to sign" the deed and that "Attorney Dooley threatened" her), she admitted that the property was being foreclosed and she was in bankruptcy, *id.* at 142–143, and that Attorney Dooley's "threats" consisted of his warning that if she did not convey the property, the buyers would be able to purchase it for even less at a foreclosure sale, *id.* at 149–150. There is no basis from which a jury could find defendants' liable for Kaltman–Glasel's displeasure at the fact or process of the sale of her property.

## C. Dual Fleet/Canaan Bank Representation

■ Kaltman–Glasel alleges that defendants represented her in two foreclosure actions (one by Fleet Bank, one by Canaan Bank), but that defendants "at the same time and for a long time prior thereto" also represented Fleet and Canaan, causing Kaltman–Glasel "excessive and unnecessary financial loss in connection with the said foreclosure attempts." Compl. ¶ 6(C)-(D). This financial loss is not further explained in the complaint, and plaintiff's opposition to summary judgment has only one conclusory paragraph of argument on this issue. *See* [Doc. # 47] at 9.[9]

The allegations that defendants represented Fleet and Canaan Banks in these foreclosures, although verified, are ineffec-

---

**8.** Kaltman–Glasel testified in her deposition that during the three years the property was on the market, these were the only offers. *See* Kaltman–Glasel Dep. at 47–48. While she later recalled a third offer of $1.3 million, *id.* at 153–154, this offer is less than the offer she complains of accepting, and thus need not be considered when taking this valuation evidence in the light most favorable to the non-movant.

**9.** After arguing that Kaltman–Glasel's verification of the complaint saves the portion of her claim in which she alleges (contrary to her deposition testimony) that defendants represented both her and the buyers of her home, the brief states: "The same applies to the defendants' contention that they did not simultaneously represent both her and banks which were her adversaries and that, even if they did, the plaintiff can't prove she was hurt thereby. A jury will have to decide the issue."

tual because they are directly contradicted by Kaltman–Glasel's deposition testimony:

Q: Do you know who represented the Canaan Bank in connection with the foreclosure that was filed with regard to the commercial property?

A: Carmody & Torrence.

Q: And who represented Fleet Bank in connection with the foreclosure of Sugar Hill?

A: Cohen, Augur, Burns & Hard.

Q: And how about the foreclosure of Brenton Hill, who represented Fleet in connection with that?

A: I don't know.

Kaltman–Glasel Dep. at 192. Additionally, to the extent that plaintiff's claim is that defendants' *prior* representation of these institutions prejudiced her, she has no evidence of any damages because she has only unsupported speculation that the properties were worth more than the price for which they sold. *See* Kaltman–Glasel Dep. at 48–49 (plaintiff did not know value of Sugar Hill property); *id.* at 62 (plaintiff could not name a value for the commercial property beyond stating that "it provided a very good income and I had it cleaned and re-rented"); *id.* at 176, 178–179 (beyond a hearsay statement about an appraisal six years prior to the sale of the property, plaintiff did not "want to venture a guess" as to the value of the Brenton Hill property). Thus, there is no genuine issue of fact left for trial on these claims.

### D. Defendant Bearns's Wife

█ Kaltman–Glasel claims that Amy Schuchat, who is the spouse of defendant

Bearns, represented the prospective tenants (Tom and Wendy Giles) of one of her properties and represented one of her creditors (George M. Taylor & Son, Inc.) in an attempt to collect an unpaid fuel bill. Once again, she lists only "further and additional financial loss" and a claimed inability "to negotiate effectively," Compl. ¶¶ 6(E) & 6(G), without any particularization, as the basis for her claimed damages for this asserted conflict of interest.

Critically, there is no evidence in the record that Attorney Bearns himself represented Kaltman–Glasel in either of these matters. Thus, the claim must necessarily be that when one lawyer-spouse represents a party, no lawyer from his or her spouse's entire law firm may represent the opposing party. Such an interpretation of the canons of legal ethics finds no support in the model rules or commentary, *see* comment to Model Rule of Professional Conduct 1.8(i) (noting that the disqualification of an attorney's spouse from representing the opposing side of a contested matter is personal to the spouse and is not imputed to his or her firm), and at the very least would require expert testimony to establish such a standard of care, whereas plaintiff's expert's report does not even address this issue.[10]

### E. Transfer of Susan Glasel's Twenty Feet of Land

█ Kaltman–Glasel also claims that while defendants were representing Susan Glasel, plaintiff's mother, the defendants knew Glasel "was not then of sound mind" but nonetheless "caused a certain twenty-foot strip of land in Salisbury, Connecticut,

---

**10.** Plaintiff's opposition to defendants' motion for summary judgment does not address any claim related to Attorney Bearns's wife beyond its cut-and-pasted recitation (word for word) of those sections of the Complaint. The Court notes that such haphazard briefing is perilously close to waiver of an issue.

*Cf. Tolbert v. Queens College,* 242 F.3d 58, 75 (2d Cir.2001) (in appellate briefing, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).

to be annexed to an adjoining parcel [of] land owned by the plaintiff." Compl. ¶ 6(F). This allegedly (but inexplicably) caused Kaltman–Glasel to lose "the right to maintain a nonconforming use of her said property and valuable economic opportunities." *Id.*

Whatever the tenuous merits of this claim, it is clearly time-barred as it concerns a land-transfer effected twelve years prior to the commencement of this action. *Id.* (transfer took place "[o]n or about March 21, 1989"). While the verified complaint contains a conclusory allegation of fraudulent concealment, *id.* ("The defendants concealed the significance of this information from the plaintiff until at least as late as September 22, 1998."), this allegation is belied by Kaltman–Glasel's deposition testimony, at which she testified that she was aware at the time of the annexation that the twenty-foot parcel of property was being transferred, Kaltman–Glasel Dep. at 100.

While Kaltman–Glasel claims that she did not know until 1998 that the strip could not be detached, this falls far short of the exacting standard for fraudulent concealment, which requires proof by "clear, precise, and unequivocal evidence," of, *inter alia*, defendants' concealment of the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on her cause of action. *Bartone v. Robert L. Day Co., Inc.*, 232 Conn. 527, 533, 656 A.2d 221 (1995) (citations omitted); *accord Bound Brook Ass'n v. Norwalk*, 198 Conn. 660, 666, 504 A.2d 1047 (1986). Here, there is no evidence that defendants purposefully attempted to hide the rules and practices governing conveyances of land; let alone that they did so with the intent to prevent

her from filing a malpractice action. Kaltman–Glasel's alternative tolling argument, based on continuous representation, is ineffective given that the absence of evidence in the record from which a jury could conclude that defendants' subsequent representation of Kaltman–Glasel ever related to the conveyance of this twenty-foot parcel of land. *See Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn.App. 151, 166, 795 A.2d 572 (2002).[11]

F. Residual Claims

Finally, Kaltman–Glasel's complaint contains a "catchall" allegation:

During the years 1995 through 1998 the defendants engaged in a pattern of representing the plaintiff in financial and real estate matters while simultaneously representing her adversaries in said matters, with resulting economic loss to the plaintiff.

Compl. ¶ 6(H). To the extent this claim is not waived by plaintiff's failure to argue it in opposition to summary judgment, *see supra* note 10, it is unavailing given Kaltman–Glasel's deposition testimony. She testified that the only other matter encompassed by this allegation was her suspicion that Attorney Dooley "was protecting my former husband's interests while representing me." Kaltman–Glasel Dep. at 195. In support of this suspicion, she opines that this suspicion is supported by: (1) Dooley's alleged failure to offer Kenneth Kaltman's demand notes as collateral on Kaltman–Glasel's loans; and (2) Kaltman's alleged payment, through Dooley, of $10,000 for Kaltman–Glasel to hire a bankruptcy attorney. *See id.* at 197–198. She offers no evidence, however, to show that

11. While Attorney Dooley advised Kaltman–Glasel in 1998 that because her contract to sell Sugar Hill included the twenty-foot strip of land, that strip must be conveyed absent some contrary agreement with the buyer, such advice cannot be said to relate back to the 1989 conveyance of the land.

any bank would have accepted Kaltman's demand notes as collateral (and thus can prove no damages), and she provides no basis for any claim that Kaltman's gift of $10,000 harmed her in any way.

III.   Conclusion

For the reasons set out above, defendants' motion for summary judgment [Doc. # 36] is GRANTED.   What remains in this case are defendants' counterclaims for unpaid legal fees and the *quantum meruit* value of unpaid legal services rendered to Kaltman–Glasel.   *See* [Doc. # 10] at 2–3 (setting out these counterclaims); [Doc. # 21] (dismissing counterclaims for vexatious litigation).

IT IS SO ORDERED.