[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
Pursuant to Connecticut Practice Book § 17-44, the defendants Stephen Vecchitto and Vecchitto, Macca Company, P.C., have moved for summary judgment on Counts One through Fifteen of plaintiffs' Demetrius Hnath and Faith Hnath's ("plaintiffs") First Amended Complaint dated December 22, 1993. The defendants argue that summary judgment should enter in their favor because all of plaintiffs' claims are barred by the applicable statute of limitations and lack evidentiary support to raise a genuine issue of material fact.
Procedural History and Facts
On November 19, 1992, plaintiffs brought this action by serving defendants Steven Vecchitto and the accounting firm of Vecchitto, Macca Company (collectively referred to as "Vecchitto") with the writ and summons. Plaintiffs' First Amended Complaint ("Complaint") dated December 22, 1993 is comprised of fifteen counts, Counts One through Seven concern alleged investment advice by Mr. Vecchitto in 1987, Counts Eight through Fourteen, the next seven counts, concern alleged investment advice by Mr. Vecchitto in 1989, and the last count, Count Fifteen, is brought pursuant to the Connecticut Uniform Securities Act and concerns both the alleged 1987 and 1989 investment advice.
Steven Vecchitto is a certified public accountant and was a principal of Vecchitto, Macca Company, an accounting firm, at the time that the alleged incident occurred. The plaintiffs allege that Vecchitto provided accounting services, in particular, preparing plaintiffs' federal tax returns, prior to 1987 and until 1992, through the tax year of 1991.
The plaintiffs allege the following. They met with Vecchitto on February 24, 1987 to prepare their 1986 Federal Tax Returns. At this meeting they requested the name of a "conservative, prudent investment" that would work well with their financial situation. In response, CT Page 2578-m Vecchitto stated that plaintiffs could invest approximately $10,000.00 per year and he recommended investing in Colonial Metro, one of the limited partnerships syndicated by Colonial Realty. Vecchitto also stated that he was familiar with Colonial Metro and that it was a sound investment with little financial risk.
The gravamen of the plaintiffs' complaint is that Mr. Vecchitto "made the recommendation that Plaintiffs invest in Colonial Metro without disclosing to the Plaintiffs that [Mr. Vecchitto and/or his accounting firm would receive financial benefit or advantage from Colonial Realty in consideration . . ." for recommending the investment to plaintiffs. Complaint, Count One, ¶ 19.
Based on Vecchitto's alleged "advice" regarding Colonial Realty, plaintiffs allege they also purchased an investment interest in Colonial Constitution on February 24, 1989. Plaintiffs allege that Vecchitto "failed to disclose" that he would receive a financial benefit or advantage from Colonial Realty in recommending the sale of Colonial Metro.
Mr. Vecchitto has submitted an affidavit in which he denies that either he or Vecchitto, Macca Company received any "financial benefit or advantage from Colonial Realty" as a result of plaintiffs' investments in Colonial Metro or Colonial Constitution. At oral argument of this Motion, the plaintiffs' counsel represented that the plaintiffs had no evidence that the defendants received any payments from Colonial Realty, and orally withdrew all Counts except Counts Two, Three, Five, Nine, Ten, and Twelve. However, to date those Counts have not been withdrawn in writing. Therefore, summary judgment is hereby entered in favor of the defendants on Counts One, Four, Six, Seven, Eight, Eleven, Thirteen, Fourteen and Fifteen. This decision will address only the remaining Counts.
Count Two sounds in professional accounting malpractice and concerns the 1987 investment in Colonial Metro. In Count Two, plaintiffs allege Mr. Vecchitto "failed to furnish tax, financial and accounting services and advice with reasonable care, in good faith, without fraud or collusion, objectively, independently and impartially and in a manner in keeping with generally acceptable level of expertise and professional standards of the industry." Complaint, Count Two, ¶ 28. Count Nine is identical to Count Two except that it concerns the 1989 investment in Colonial Constitution. Count Two further alleges:
11. Since before 1987 until tax year 1991, Defendants have provided accounting services to plaintiffs, including assisting plaintiffs in CT Page 2578-n completing their federal tax returns.
12. Defendant Vecchitto was familiar with the plaintiffs' financial situation and aware that they had little investment experience with real estate or security investments.
13. On or about February 24, 1987, Plaintiffs met with Defendant Vecchitto to prepare plaintiffs' 1986 Federal Tax Returns.
14. Plaintiff (sic) mentioned to Defendant Vecchitto that they were interested in finding an appropriate, conservative, prudent investment as part of their plan to provide for their sons' college educations.
15. Defendant Vecchitto advised plaintiffs that, in light of their income, they could afford to invest approximately $10,000 per year.
16. Defendant Vecchitto advised plaintiffs to invest in Colonial Metro. He represented to plaintiffs that he was familiar with the investment, had reviewed the relevant projected return on investment and underlying presumptions and was recommending it as a prudent, sound and appropriate investment for plaintiffs.
17. Defendant Vecchitto conveyed to the Plaintiffs the benefits of investing in a Colonial Realty Limited Partnership including, but not limited to, the financial security and soundness of the investment, its limited risk, its tax benefits, and the relative size of the Colonial Realty General Partnership.
18. Vecchitto represented to Plaintiffs that the Metro investment presented little financial risk because the investment was bonded.
Count Nine contains allegations substantially similar to those of Count Two, but pertains to Vecchitto's representations and advice to the plaintiffs concerning their investment in Colonial Constitution.
Count Three sounds in negligent misrepresentation and concerns the 1987 investment in Colonial Metro. Count Ten contains allegations substantially similar to those of Count Three, but pertains to Vecchitto's representations and advice to the plaintiffs concerning their investment in Colonial Constitution.
The defendants argue that the sole allegations of wrongdoing against Vecchitto was that it failed to disclose that it was receiving a financial benefit from Colonial Realty and that the Complaint contains no allegations that the investment advice was poor or improper, or that the CT Page 2578-o defendants failed to sufficiently investigate the limited partnerships in questions before recommending them to the plaintiffs as "prudent" investments. The court disagrees. When the allegations set forth above are coupled with the allegations of the plaintiff's loss, and the deposition testimony of Mr. Vecchitto as to the financial downfall of Colonial Realty in 1990, the Complaint sufficiently alleges that the advice was poor and/or improper.
Count Five sounds in breach of contract and concerns the 1987 investment in Colonial Metro. In Count Five, the plaintiffs allege that Mr. Vecchitto "breached [his] contractual obligation to Plaintiffs to furnish tax and accounting advice and services with reasonable care, in good faith, without fraud or collusion, and objectively and impartially." Complaint, Count Five, ¶ 34. Count Twelve is the same as Count Five except that it concerns the 1989 investment in Colonial Constitution.
On October 4, 1990, Mr. Vecchitto informed the plaintiffs of the litigation surrounding Colonial Realty and its Colonial Metro and Colonial Constitution investment offerings and an upcoming meeting to discuss the lawsuit. On October 12, 1990, plaintiffs were sent correspondence from the law firm of Beigel Sandler, Ltd. describing the Colonial Realty litigation. On October 24, 1990, the plaintiffs executed a General Representation agreement with the law firm of Beigel Sandler, Ltd. with regards to the litigation against Colonial Realty. The plaintiff, Faith Hnath, acknowledged in her deposition that she discussed the Colonial Realty litigation with Mr. Vecchitto in October of 1990 and read accounts of the Colonial Realty situation in theHartford Courant newspaper.
Discussion of the Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. MiddlesexIns. Co., 219 Coon. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430,434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. HartfordHospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion CT Page 2578-p for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v.Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
The defendants argue that Counts Two and Nine for professional negligence/accounting malpractice and Counts Three and Ten for negligent misrepresentation are barred by Connecticut General Statutes § 52-577. Causes of action sounding in tort are subject to the three-year statute of limitations contained within Connecticut General Statutes § 52-577.
The defendants further argue that Counts Five and Twelve, which allege breach of contract, are either barred by Connecticut General Statutes § 52-581, which provides for a three-year statute of limitations for oral contracts, or are really tort claims, and also barred by § 52-577.
Connecticut General Statutes § 52-577, the general tort statute of limitations, provides that "no action founded upon tort shall be brought but within three years from the date of the act or omission complained of." See also Lambert v. Stovel, 205 Conn. 1, 4, 529 A.2d 710 (1987). "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." S.M.S. Textile Mills,Inc. v. Brown, Jacobson, Tillinghast, Lahan King, P.C.,32 Conn. App. 786, 790, 631 A.2d 340 (1993); Fichera v. Mine Hill Corp.,207 Conn. 204, 212-13, 541 A.2d 472 (1988). The three-year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date the plaintiff actually first discovers an injury. Id. Because § 52-577 is an occurrence statute, a plaintiff could be foreclosed of any remedy before discovery of the actionable harm. S.M.S. Textile Mills, Inc., supra, at 790-91 (1993); BellsouthTelecomms., Inc. v. W.R. Grace Co., 77 F.3d 603, 616 (1984). CT Page 2578-q Ignorance or lack of knowledge of the actionable harm is irrelevant to the analysis as set forth by Connecticut General Statutes § 52-577.Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 179, 62 A.2d 771
(1948); Bellsouth Telecommuns., Inc. v. W.R. Grace Co.,77 F.3d at 616.
The defendants argue that the harm occurred for statute of limitations purposes on February 24, 1987, when the plaintiffs purchased an interest in Colonial Metro, and on October 5, 1989 when the plaintiffs purchased an interest in Colonial Constitution, both allegedly in reliance on Vecchitto's representations that those investments were conservative, safe, and their projections realistic. The plaintiffs commenced this action on November 19, 1992, more than three years after both dates. Therefore, the defendants argue, Counts Two, Three, Nine and Ten are barred by § 52-577 and Counts Five and Twelve are barred by §52-577 or § 52-581.
The plaintiffs argue that Vecchitto had a continuing duty to investigate the investments as well as a continuing duty to disclose his failure to fully investigate them and that these continuing duties tolled the statute of limitations. The defendants rely on the case of Sanbornv. Greenwald, 39 Conn. App. 289, 295-96, 664 A.2d 283 (1995), a case of legal malpractice in which the plaintiff claimed that the defendant committed malpractice in 1985 when he drafted a stipulated judgment on her behalf. The plaintiff in Sanborn first learned of the attorney's negligence in 1989, and did not commence the suit until 1992. The defendant raised the statute of limitations as a defense and the plaintiff argued that representations made by the defendant in 1989 and 1990 to her, her attorney, and the trial court, constituted a continuing course of conduct that tolled the statute of limitations. The trial court granted summary judgment in favor of the defendant. That judgment was affirmed on appeal.
The Court in Sanborn stated:
"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Id. For example, the doctrine is generally applicable under circumstances where "[i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury" or where the negligence consists of a series of acts or omissions and it is "appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . ." Id., 277. CT Page 2578-r39 Conn. App. at 295-96 (quoting Blanchette v. Barrett, 229 Conn. 256,640 A.2d 74 (1994)).
The Court in Sanborn distinguished the case before it from cases in which the statute of limitations had been tolled. Blanchette v. Barrett,supra (statute of limitations was tolled because of evidence that the defendant physician had failed to satisfy his duty of monitoring the plaintiff's questionable breast condition); Cross v. Huttenlocher,185 Conn. 390, 440 A.2d 952 (1981) (statute of limitations tolled because of the negligent failure of a physician to warn a patient of the harmful side effects of a drug that the physician had prescribed and that the patient had continued to ingest over a period of time); Giglio v.Connecticut Light Power Co., 180 Conn. 230, 429 A.2d 486 (1980) (statute of limitations tolled because the installer of a pilot light gave repeated instructions as to its use in response to multiple complaints by the plaintiff); Handler v. Remington Arms Co., 144 Conn. 316,321, 130 A.2d 793 (1957) (statute of limitations was tolled by the defendant manufacturer's continuing failure to warn of the potential danger associated with an inherently dangerous cartridge of ammunition). The Court stated that in each of the foregoing cases, "the plaintiff's injury was perpetuated, enhanced and even caused by the breach of a duty on the part of the defendant." 39 Conn. App. at 297.
The Court noted that the defendant's representation of the plaintiff inSanborn had ended in 1985 and stated that the "defendant here had no continuing duty to notify the plaintiff of the alleged mistake in the stipulation in the absence of proof that he subsequently learned that his drafting was negligent." See Blanchette v. Barrett, supra; see also Nardiv. AA Electronic Security Engineering, Inc., 32 Conn. App. 205, 213,628 A.2d 991 (1993). The Court further stated:
Further, the defendant was not capable of remedying any problems with the stipulation once it had been approved by the trial court in 1985.
There is no tolling of statutes of limitation in either tort or contract actions for the failure of an attorney to tell a client that a document drafted by the attorney could be inaccurate because, once the representation of the client is complete and the document executed, any warning would be ineffective. See Robbins v. McGuinness, 178 Conn. 258,262, 423 A.2d 897 (1979). The doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete, such as medical malpractice, rather than one where the situation cannot change, such as legal malpractice arising from negligent drafting of the written word. CT Page 2578-s
39 Conn. App. at 297-98.
The present case is different from Sanborn in that in Sanborn there was no dispute that the defendant's representation of the plaintiff ceased after 1985. However, here, the plaintiffs have presented evidence that Vecchitto acted as their accountant and investment advisor until 1992, thus leaving open the possibility that he could have subsequently learned that his advice to the plaintiffs concerning the Colonial Limited Partnership investments was inaccurate. This continued representation is problematic because of the dicta in Sanborn that "defendant here had no continuing duty to notify the plaintiff of the alleged mistake in the stipulation in the absence of proof that he subsequently learned that his drafting was negligent." 39 Conn. App. at 297.
It is undisputed that in 1990 both the plaintiffs and Vecchitto learned that Colonial Realty had massive financial problems. Arguably, this knowledge created a duty on the part of Vecchitto in 1990 to reassess his advice to the plaintiffs and inform them that his advice was incorrect or his review negligent. It could well be that Vecchitto's continued relationship with the plaintiffs coupled with his knowledge in 1990 of Colonial's problems served to extend the date on which the statute started running to sometime in 1990. If that is the determinative year, then the plaintiffs' suit filed in 1992 would not be barred by § 52-577
or § 52-581.
In this case the defendants have argued that the statute of limitations started to run in 1987 and 1989 when the plaintiffs purchased their limited partnership interests in reliance on the advice of Vecchitto. The plaintiffs have offered no evidence that they could have avoided or mitigated the damages they suffered as a result of those investments even if they had received notification from the defendants that Vecchitto's investment advice was negligent. Therefore, if Sanborn was the controlling precedent here, then any cause of action to which the three-year statute of limitations applied would probably be barred. However, additional case law has created further questions as to when a statute of limitations is tolled by a continuing course of conduct, or continuing representation.
In Giulietti v. Giulietti, 65 Conn. App. 813, 832-36, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95 (2001), the Appellate Court applied the continuing course of conduct doctrine to toll the statute of limitation in a legal malpractice action. The Appellate Court again considered that doctrine with respect to legal malpractice in Rosenfieldv. Rogin, Nassau, Caplan, Lassinan H., 69 Conn. App. 151, CT Page 2578-t795 A.2d 572 (2002).
In Rosenfeld the Court reiterated the two conditions which trigger the operation of the continuing course of conduct doctrine. First, the defendant must have committed an initial wrong upon the plaintiff. Second, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto.
The Court held that while the plaintiff had satisfied the first prong by alleging in his complaint that his attorney negligently prepared and presented the plaintiff's evidence at trial, he failed to satisfy the second prong, which requires consideration of whether there was a continuing duty which related to the initial wrong. Finding no allegation against the attorney of subsequent wrongful conduct which related to the initial wrong, the Court held that the plaintiff had not satisfied the second prong of the continuing course of conduct test.
The Court in Rosenfeld recognized for the first time the so-called continuous representation doctrine. As Rosenfeld demonstrates, that doctrine can toll the statute of limitations even where it would not be tolled under the continuing course of conduct doctrine. The policy underlying the continuing representation doctrine is similar to the policy underlying the continuing course of conduct doctrine in that during "an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Blanchette v. Barrett, supra, at 276.
The Court in Rosenfeld further stated:
We conclude that we should adopt the continuous representation doctrine for several reasons. First, we already permit tolling of the statute of limitations under the continuing course of conduct and continuous treatment doctrines, which are very similar in policy and application to the continuous representation doctrine. Second, to require a client to bring an action before the attorney-client relationship terminates would encourage the client constantly to second-guess the attorney and force the client to obtain other legal opinions on the attorney's handling of the case. Nothing could be more destructive of the attorney-client relationship, which we strive to preserve. Third, requiring a client to bring a malpractice action against the attorney during the pendency of an appeal from the judgment in an underlying action in which that attorney allegedly committed malpractice could force the client into adopting inherently different litigation postures and thereby compromise the likelihood of success in both proceedings because the client would be defending the attorney's actions in the appeal and contesting the CT Page 2578-u attorney's actions in the malpractice action. Hughes v. Mahaney Higgins, 821 S.W.2d 154, 156-57 (Tex. 1991). Fourth, the policy underlying the statute of limitations is upheld because the conduct that is the subject of legal malpractice actions is generally memorialized in court pleadings or in hearing transcripts and, thus, the dangers associated with delay are lessened. AMFAC Distribution Corp. v. Miller,138 Ariz. 155, 158, 673 P.2d 795 (Ct.App.), aff'd., 138 Ariz. 152,673 P.2d 792 (1983) (en banc). Fifth, adoption of the continuous representation doctrine would prevent an attorney from postponing the inevitable event of defeat beyond the statute of limitations period to protect himself from liability for his actions. See Siegel v. Kranis,supra, 29 App.Div.2d 480. Ultimately, the tolling period would help to prevent disruption of the attorney-client relationship yet still protect the client's right to bring an action against the attorney for negligence while at the same time allowing the allegedly negligent attorney to correct or minimize the error. We conclude that the continuous representation doctrine may apply to toll the statute of limitations in a legal malpractice action.
69 Conn. App. at 165-66.
The Rosenfield Court held that in order for the continuous representation doctrine to apply to a legal malpractice action and to operate to toll the statute of limitations, the client must show that (1) the attorney continued to represent him and (2) the representation related to the same transaction or subject matter as the allegedly negligent acts. Id.
This case does not involve attorney malpractice. However, the relationship between an accountant and a client is sufficiently similar to that between an attorney and a client to raise a question as to whether or not the continuous representation doctrine applies to the accountant-client relationship in this case. If it does, then it might have the effect of tolling the statute of limitations during the course of the representation. Such a tolling would mean that the plaintiffs' claims alleged in Counts Two, Three, Five, Nine, Ten, and Twelve would be timely.
This court declines to grant a summary judgment on statute of limitations grounds because the law, insofar as it applies to this case, is unclear and, therefore, judicial economy would be better served if the case proceeds to trial with all factual and legal issues being decided and, if necessary, appealed at one time.
By the court,
Aurigemma, J. CT Page 2578-v
[EDITORS' NOTE: This page is blank.] CT Page 2578-w