# DAVID DELEO *v.* EDWARD NUSBAUM ET AL.
## (SC 16750)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued October 25, 2002—officially released May 20, 2003

*John R. Williams*, for the appellant (plaintiff).

*Paul E. Pollock*, for the appellees (defendants).

*Opinion*

SULLIVAN, C. J. The primary issue in this appeal is whether the trial court properly concluded that the continuous representation rule did not apply in the plaintiff's legal malpractice action so as to toll General Statutes § 52-577, the statute of limitations applicable to tort actions. We conclude that the trial court improperly concluded that the action is barred by § 52-577. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are necessary to our disposition of this appeal. The plaintiff, David DeLeo, brought this action against the defendants, Edward Nusbaum, an attorney, and the law firm of Nusbaum and Parrino, P.C., in which Nusbaum is a principal. The plaintiff claimed that the defendants had failed to represent him adequately in a dissolution action brought by his wife. The plaintiff commenced his action against the defendants by service of process

on June 27, 1996. In his complaint he alleged that twelve acts or omissions by the defendants constituted negligence.[1] Specifically, the plaintiff claimed that the defendants negligently had entered into a stipulated agreement, on behalf of the plaintiff, in which the plaintiff was permitted only supervised visitation with his children. In answering the plaintiff's complaint, the defendants denied these allegations and asserted as a special defense that the plaintiff's claims were time barred by § 52-577, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

Following the close of the plaintiff's case, the defendants moved for a directed verdict, again asserting, inter alia, that the action was barred by the statute of limitations. The defendants also maintained in their motion that the plaintiff did not provide sufficient evidence that the defendants' alleged negligence proximately caused any harm to the plaintiff, and that, therefore, any jury finding that such harm was caused would be purely speculative.

The trial court rejected the latter grounds for a directed verdict, concluding that the jury reasonably could find that negligence by the defendants had harmed the plaintiff. With regard to the defendants' statute of limitations claim, the court noted that all of the allegedly negligent acts and omissions were alleged to have occurred in 1992, outside the three year period required by § 52-577. The court then considered the plaintiff's claim that the statute of limitations was tolled in the present case under the continuing course of conduct doctrine or the continuous representation doc-

---

[1] The plaintiff's original complaint also alleged breach of a contract to represent the plaintiff diligently, responsibly and professionally, breach of a fiduciary duty owed to him, fraud, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. He subsequently withdrew these claims.

trine. After concluding that the continuing course of conduct doctrine was factually inapplicable, the trial court considered the potential applicability of the continuous representation doctrine, under which the statute of limitations in legal malpractice cases may be tolled while the legal representation continues.

Apparently aware that, at the time at which it rendered its decision, there was no appellate case law in this state recognizing the continuous representation doctrine, the trial court assumed that this doctrine was equivalent to the course of treatment rule. Under the course of treatment rule, which we have recognized in the context of medical malpractice, the statute of limitations may be tolled during the course of treatment. See *Blanchette* v. *Barrett*, 229 Conn. 256, 278, 640 A.2d 74 (1994); *Giambozi* v. *Peters*, 127 Conn. 380, 16 A.2d 833 (1940), overruled on other grounds, *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966).

The trial court thus concluded that the statute of limitations could be tolled in the present case only insofar as the present case met requirements it believed were analogous to those imposed by the course of treatment rule. Although the court found that the requirement that the defendants had continued to represent the plaintiff within three years of the commencement of the action had been met, it also found that several other elements it believed to be required had not been satisfied. Specifically, the court concluded that the statute could be tolled under the continuous representation doctrine only if the defendants had continued to represent the plaintiff with regard to the particular *acts* alleged to be negligent, as well as with regard to the same underlying subject matter. The court concluded that this requirement was not met in the present case, because those acts all occurred more than three years before the commencement of the plaintiff's action. The court also presumed that the application of the continu-

ous representation doctrine required that it must have been possible, during the time of the defendants' continued representation of the plaintiff, for the defendants to have "cure[d]" or corrected the harms allegedly caused by their negligence. The court concluded that this requirement was not met in the present case because there was no allegation that the defendants could have alleviated those alleged harms during this continued representation.

In addition, the court considered whether there was a continuing relationship between the parties within three years of the commencement of the action. The court concluded that, in the present case, the attorney-client relationship "had broken down irretrievably" more than three years before the plaintiff commenced his action against the defendants and that the jury could not reasonably have found otherwise. The court based this determination on a letter, dated June 22, 1993, that the plaintiff had sent to his wife, in which he stated, "[i]ncident[al]ly, you[r] lawyers have not only committed malpractice in handling this case but are guilty of billing fraud," and "[m]y lawyer has not done much better." The court fixed the date of the breakdown of the relationship as the date of the letter, although the court also found that the defendants had represented the plaintiff at a deposition regarding the same underlying action on June 28, 1993, that the defendants had filed a motion to withdraw from the case on June 30, 1993, and that the motion had been granted on July 6, 1993.

The court also noted that, under *Blanchette* v. *Barrett*, supra, 229 Conn. 278, the point at which a course of treatment ends for purposes of the continuous treatment doctrine "depends upon several factors." The court considered how several of these factors would apply by analogy to determine the point at which an attorney-client relationship ends, including whether the

patient was relying upon the advice of the physician with regard to the medical condition at issue, whether the parties had considered terminating their relationship, and whether there was a lack of trust in the physician. Using the analogy, the court concluded by that, in the present case, all of those factors weighed against the application of the tolling doctrine.

Thus, the court concluded that the jury could not reasonably have found that there was a continuing attorney-client relationship between the plaintiff and the defendants within three years of commencement of the action sufficient to toll the statute of limitations in this case. Accordingly, the court granted the defendants' motion for a directed verdict on the ground that the action was barred by the statute of limitations. Thereafter, the plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We reverse the judgment of the trial court.

I

A motion for a directed verdict is warranted only if, considering the evidence presented, the jury could not reasonably have found in favor of the nonmoving party. *Gagne* v. *Vaccaro*, 255 Conn. 390, 400, 766 A.2d 416 (2001). In the present case, the trial court based its decision to grant the defendants' motion for a directed verdict on its interpretation of the continuous representation doctrine. Because this presents a pure question of law, our review is plenary. *State* v. *Luurtsema*, 262 Conn. 179, 185, 811 A.2d 223 (2002).

As noted previously, at the time the trial court directed judgment in this case, there was no appellate case law in this state addressing whether this state recognized the continuous representation doctrine. The doctrine, however, enjoys widespread support in other

states. Indeed, a majority of states that have considered this doctrine have adopted it in some form. 3 R. Mallen & J. Smith, Legal Malpractice (5th Ed. 2000) § 22.13, p. 437.

The continuous representation doctrine was developed primarily in response to the harsh consequences of the occurrence rule, under which the period during which an action may be brought begins to run at the time of the allegedly tortious conduct, even though the attorney continues to represent the client, the client may be unaware of the tortiousness of the conduct, and there has not yet and may never be an injury as a result of that conduct. Id., § 22.13, p. 430. Like the trial court in the present case, courts adopting the continuous representation doctrine have frequently held it to be analogous to the course of treatment rule. See, e.g., *Siegel* v. *Kranis*, 29 App. Div. 2d 477, 480, 288 N.Y.S.2d 831 (1968); *Omni-Food & Fashion, Inc.* v. *Smith*, 38 Ohio St. 3d 385, 387, 528 N.E.2d 941 (1988).

After the filing of this appeal, the Appellate Court recognized the continuous representation doctrine, concluding that, in legal malpractice cases, the statute of limitations is tolled during that period for which the plaintiff "must show that (1) the attorney continued to represent him and (2) the representation related to the same transaction or subject matter as the allegedly negligent acts." *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 166, 795 A.2d 572 (2002).

In *Rosenfield*, the Appellate Court stated: "We conclude that we should adopt the continuous representation doctrine for several reasons. First, we already permit tolling of the statute of limitations under the continuing course of conduct and continuous treatment doctrines, which are very similar in policy and application to the continuous representation doctrine. Second, to require a client to bring an action before the attorney-

client relationship terminates would encourage the client constantly to second-guess the attorney and force the client to obtain other legal opinions on the attorney's handling of the case. Nothing could be more destructive of the attorney-client relationship, which we strive to preserve. Third, requiring a client to bring a malpractice action against the attorney during the pendency of an appeal from the judgment in an underlying action in which that attorney allegedly committed malpractice could force the client into adopting inherently different litigation postures and thereby compromise the likelihood of success in both proceedings because the client would be defending the attorney's actions in the appeal and contesting the attorney's actions in the malpractice action. . . . Fourth, the policy underlying the statute of limitations is upheld because the conduct that is the subject of legal malpractice actions is generally memorialized in court pleadings or in hearing transcripts and, thus, the dangers associated with delay are lessened. . . . Fifth, adoption of the continuous representation doctrine would prevent an attorney from postponing the inevitable event of defeat beyond the statute of limitations period to protect himself from liability for his actions." (Citations omitted.) Id., 165.

In addition to those provided by the Appellate Court in *Rosenfield*, two principal rationales have been identified as underlying the continuous representation doctrine. The first is that "a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." (Internal quotation marks omitted.) *Cantu* v. *St. Paul Cos.*, 401 Mass. 53, 58, 514 N.E.2d 666 (1987), quoting *Greene* v. *Greene*, 56 N.Y.2d 86, 94, 436 N.E.2d 496, 451 N.Y.S.2d 46 (1982). The second is that the continuous representation doctrine furthers the goal of

"enabling the attorney to correct, avoid or mitigate the consequences of an apparent error . . . ." 3 R. Mallen & J. Smith, supra, § 22.13, p. 428.

We find these reasons persuasive. We are also mindful, however, of the fact that any tolling of the statute of limitations may compromise the goals of the statute itself. "A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." *Ecker* v. *West Hartford*, 205 Conn. 219, 240, 530 A.2d 1056 (1987).

Finally, we note the particular importance of clear legal standards in this area. Both legislative policy and the interests of justice are furthered by the elimination of unnecessary uncertainty regarding the date upon which plaintiffs' claims are barred by the statute of limitations. In the absence of a clear standard, a plaintiff's reasonable understanding of the facts that determine the tolling period may result in the expiration of his claim if a fact finder subsequently disagrees and determines that the tolling period ended earlier than the plaintiff had supposed. A plaintiff who is uncertain as to whether the doctrine applies likely will feel compelled to institute an action against his attorney, for fear that a court or a jury ultimately will conclude that the statute is not tolled. In such a situation, one of the primary purposes of the doctrine, fostering and preserving the attorney-client relationship, will be compromised.

With these various considerations in mind, we conclude that the continuous representation doctrine, suit-

ably modified to reflect these competing interests, should be adopted. Thus, today we join the majority of states that have adopted the continuous representation doctrine. 3 R. Mallen & J. Smith, supra, § 22.13, p. 437.[2] Under the rule we adopt today, a plaintiff may invoke the doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter;[3] *and* (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period.[4]

With regard to the first prong, we conclude that the representation continues for the purposes of the continuous representation doctrine until either the formal or the de facto termination of the attorney-client relationship. The formal termination of the relationship occurs when the attorney is discharged by the client, the matter for which the attorney was hired comes to a conclusion, or a court grants the attorney's motion to withdraw from the representation. A de facto termination occurs if the client takes a step that unequivocally indicates that hehas ceased relying on his attorney's professional judgment in protecting his legal interests, such as hiring a second attorney to consider a possible malpractice

[2] See, e.g., *Greene* v. *Greene*, supra, 56 N.Y.2d 86; *Keaton Co.* v. *Kolby*, 27 Ohio St. 2d 234, 271 N.E.2d 772 (1971); *Schoenrock* v. *Tappe*, 419 N.W.2d 197 (S.D. 1988); *McCormick* v. *Romans*, 214 Va. 144, 198 S.E.2d 651 (1973).

[3] Thus, the trial court improperly concluded that the statute could be tolled only for as long as the defendants represented the plaintiff with regard to the same *acts* alleged to be negligent.

[4] While we anticipate that these standards would be applicable to all attorney malpractice cases, we acknowledge that the implications of tolling for attorney-client relationships in the context of litigation may not be the same as those for other attorney-client relationships. Accordingly, our holding today is limited to cases in which an attorney is alleged to have committed malpractice during the course of litigation.

claim[5] or filing a grievance against the attorney.[6] Once such a step has been taken, representation may not be said to continue for purposes of the continuous representation doctrine. A client who has taken such a concrete step may not invoke this doctrine, because such actions clearly indicate that the client no longer is relying on his attorney's professional judgment but instead intentionally has adopted a clearly adversarial relationship toward the attorney. Thus, once such a step has been taken, representation does not continue for purposes of the continuous representation doctrine.

Thus, we reject the requirement imposed by the trial court that the client continue to trust his attorney in order for the attorney-client relationship to continue for purposes of this doctrine. This requirement would necessitate determinations of how much disenchantment with a client's attorney is too much, both by courts applying the rule and by clients seeking to ascertain the date upon which their malpractice claims will be barred. Equally important, a client is free to change his or her mind and reestablish a relationship of trust even after actions or statements, such as the letter written in the present case by the plaintiff to his wife, that may indicate a lack of such trust in his attorney at the time made. Under the doctrine we adopt today, the client retains this option until he clearly and intentionally closes it off by adopting a position adverse to that of the attorney.

Similarly, we reject the factor-based approach employed by the trial court to determine the point at which the course of representation ceased. As noted

---

[5] Cf. *Cantu* v. *St. Paul Cos.*, supra, 401 Mass. 58 (rejecting application of doctrine where client has retained another lawyer to evaluate alleged malpractice at issue).

[6] Cf. *Brown* v. *Johnstone*, 5 Ohio App. 3d 165, 166–67, 450 N.E.2d 693 (1982) (statute of limitations may not be further tolled when client has filed complaint against attorney).

previously, the trial court reasoned, by analogy to the continuous treatment rule, that whether "treatment" or representation was ongoing for the purposes of this rule depends upon the weighing of factors such as whether the plaintiff continued to rely on the defendant's advice, whether the parties had considered terminating their relationship, and whether there was a lack of trust in the defendant. Any standard that requires the weighing of factors promotes an uncertainty of application, because it requires some discretion regarding how various factors are to be weighed in a given case. Because we hold that, for purposes of this rule, the attorney-client relationship continues until the formal or de facto termination of that relationship, the continuous representation doctrine we adopt today provides a clearer standard.

In addition, as noted previously, even when the relationship continues and has not been terminated, either formally or de facto, the continuous representation doctrine we adopt today only tolls the statute of limitations for as long as either the plaintiff does not know of the alleged malpractice or the attorney may still be able to mitigate the harm allegedly caused. Tolling the statute while the plaintiff lacks actual knowledge of the alleged malpractice serves the purpose of not requiring the client to second-guess his attorney. Tolling the statute while the attorney may be able to mitigate the damage permits the client, without endangering his malpractice claim, to allow the attorney who is already working on his case to attempt to mitigate or even prevent harm.[7]

[7] The importance of this consideration leads us to reject the limitation imposed by some states under which the statutory period begins to run as soon as the client learns of the malpractice, regardless of whether the attorney may be able to mitigate the harm through continued representation. See, e.g., *Hodas* v. *Sherburne, Powers & Needham, P.C.*, 938 F. Sup. 58, 59 (D. Mass. 1996); *Frederick Road Ltd. Partnership* v. *Brown & Sturm*, 360 Md. 76, 99–101, 756 A.2d 963 (2000); *Economy Housing Co.* v. *Rosenberg*, 239 Neb. 267, 269, 475 N.W.2d 899 (1991).

Furthermore, it will ordinarily be the case that tolling while mitigation remains possible will prevent the client from having to sue his attorney while the initial litigation is pending. When none of these purposes is furthered by tolling the statute, however, the tolling must end.

In applying this test to the facts of the present case, we conclude the following. First, with regard to whether there was a de facto or formal termination of the relationship, the trial court, in finding that the plaintiff's relationship with the defendants had deteriorated to such an extent that the plaintiff was not entitled to the protection of this doctrine, relied on evidence that the plaintiff had sent a letter to his wife stating that "you[r] lawyers have not only committed malpractice in handling this case but are guilty of billing fraud," and "[m]y lawyer has not done much better." The act of sending this letter to the plaintiff's wife does not rise to the level of unequivocally indicating that the plaintiff had ceased relying on his attorney's professional judgment in protecting his legal interests and, therefore, as a matter of law, does not constitute a de facto termination of the attorney-client relationship.

Accordingly, we next consider whether the plaintiff can establish either the mitigation or lack of knowledge components of the second prong. The trial court found that the plaintiff had admitted that the defendants could not have mitigated the damage allegedly caused by their negligence in 1992. Thus, because of the inability to establish mitigation, the plaintiff is required to show that he had no knowledge of the defendants' negligence. The plaintiff has not presented any evidence on this issue, nor was it considered by the trial court, because the plaintiff and the trial court reasonably did not understand the rule to require such evidence. Under these circumstances, we conclude that it is proper to reverse the judgment of the trial court and remand the case to that court with direction to consider, in light of the

continuous representation doctrine we adopt today, whether the plaintiff's claim is barred by the statute of limitations.

## II

The defendants assert, as an alternative ground for affirmance, that they were entitled to a directed verdict because, they maintain, the plaintiff did not provide adequate evidence that the defendants' alleged negligence proximately caused any harm to the plaintiff. We conclude that the trial court properly rejected this argument.

As previously noted, a motion for a directed verdict is warranted only if, acting on the evidence presented, the jury could not reasonably have found in favor of the nonmoving party. *Gagne* v. *Vaccaro*, supra, 255 Conn. 400. In the present case, the transcript indicates that, on numerous occasions, the plaintiff's expert witness, Louis Kiefer, an attorney, expressed the opinion that, but for the defendants' allegedly negligent acts and omissions, the plaintiff most likely would have been granted unsupervised visitation of his children in the child custody component of the dissolution action with regard to which the defendants represented the plaintiff. The jury reasonably could have chosen to credit this testimony and could have concluded that negligent acts or omissions by the defendants proximately caused harm to the plaintiff.

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.