******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ELLEN M. MANZO-ILL *v.* SAMUEL V. SCHOONMAKER III ET AL.
## (AC 40447)

DiPentima, C. J., and Keller and Moll, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant law firm, S Co., for legal malpractice and fraudulent misrepresentation in connection with its representation of her in a prior marital dissolution action. On May 20, 2013, the plaintiff delivered a writ of summons and complaint to a state marshal, who thereafter made service on S Co. on June 10, 2013. In response to the plaintiff's complaint, S Co. filed an answer and raised a special defense that the action was barred by the applicable statute of limitations (§ 52-577), which permits a tort action to be brought within three years from the date of the act or omission complained of. Thereafter, the trial court granted S Co.'s motion to bifurcate the trial, which requested the court to consider S Co.'s statute of limitations defense before it considered the merits of the plaintiff's complaint. Following a trial on the statute of limitations issue, the court rendered judgment in favor of S Co., concluding that the plaintiff's claims were barred by the three year limitation period set forth in § 52-577. In its memorandum of decision, the court found that after S, the attorney and partner at S Co. who represented the plaintiff in the dissolution action, informed the plaintiff that he planned to retire, the plaintiff indicated to S that she understood his letter to mean that she needed to retain new counsel, and that on March 11, 2010, she retained new counsel when another law firm filed an appearance in lieu of S Co., which withdrew S Co.'s appearance in the dissolution action by law pursuant to the relevant rule of practice (§ 3-9). The court also found that certain post-March, 2010 billing records of S Co. that the plaintiff had relied on failed to support her continuous representation claim and, thus, that plaintiff had failed to establish that the continuing representation doctrine tolled the statute of limitations. The plaintiff subsequently filed a motion to reargue, claiming that the court had failed to take judicial notice of S Co.'s automatic appearance in the appeal in the dissolution action when it considered her continuous representation claim. The trial court denied the motion to reargue, and the plaintiff appealed to this court. *Held*:

1. The trial court properly concluded that the plaintiff's action was barred by the statute of limitations set forth in § 52-577, as the evidence established that the attorney-client relationship between the plaintiff and S Co. terminated on March 11, 2010, thereby precluding the tolling of the statute of limitations through the doctrine of continuous representation after that date, and the plaintiff failed to commence her action within three years from that date: the plaintiff's claim that the trial court misapplied the rule in *DeLeo* v. *Nusbaum* (263 Conn. 588) regarding the continuous representation doctrine and the tolling of the statute of limitations by erroneously expanding the rule with respect to whether the attorney-client relationship had ended was unavailing, as her assertion that the specific methods listed in *DeLeo* constitute the only valid methods to terminate an attorney-client relationship in establishing the first prong of the doctrine construed the rule in *DeLeo* too narrowly, the key issue instead being whether, under either a formal or de facto termination, the relationship between the attorney and client had ended, and evidence in the record demonstrated that the attorney-client relationship between the plaintiff and S Co. ended in March, 2010; moreover, in applying the continuous representation doctrine, the trial court properly concluded that the events of this case implicated aspects of both a formal and a de facto termination of S Co.'s representation in March, 2010, namely, new counsel's filing of the in lieu of appearance, which signified the termination of S Co.'s representation of the plaintiff, the plaintiff's acknowledgment of the end of the attorney-client relationship, as evidenced by a letter she sent to S specifically noting that S Co. no longer represented her, and the plaintiff's hiring of new counsel, which

indicated that she no longer relied on the professional judgment of S Co. to protect her legal interests.

2. The trial court did not abuse its discretion in denying the plaintiff's motion to reargue, in which she claimed that the court failed to take judicial notice of S Co.'s automatic appearance in the appeal in the dissolution action when it considered her continuous representation claim; the plaintiff failed to raise that issue during the trial and, instead, brought it to the trial court's attention for the first time after it had rendered its decision, and, therefore, she did not identify a principle of law or fact that the court had been presented with at trial but, rather, sought a second opportunity to litigate her claim regarding the applicability of the continuous representation doctrine.

Argued October 18, 2018—officially released March 12, 2019

*Procedural History*

Action to recover damages for, inter alia, legal malpractice, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator, J.*, granted in part the defendants' motion to dismiss; thereafter, the court granted the motion to bifurcate the trial filed by the defendant Schoonmaker, George & Blomberg, P.C., and the matter was tried to the court; judgment for the defendant Schoonmaker, George & Blomberg, P.C.; subsequently, the court denied the plaintiff's motion to reargue, and the plaintiff appealed to this court. *Affirmed.*

*James H. Lee*, for the appellant (plaintiff).

*Scott S. Centrella*, with whom, on the brief, was *Timothy P. Moylan*, for the appellee (defendant Schoonmaker, George & Blomberg, P.C.).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Ellen M. Manzo-Ill, appeals from the judgment of the trial court rendered in favor of the defendant Schoonmaker, George & Blomberg, P.C.,[1] after a trial before the court. The court concluded that the plaintiff's claims of legal malpractice and fraudulent misrepresentation were barred by the three year statute of limitations set forth in General Statutes § 52-577.[2] On appeal, the plaintiff claims that the court (1) misapplied our Supreme Court's holding in *DeLeo* v. *Nusbaum*, 263 Conn. 588, 821 A.2d 744 (2003), regarding the continuous representation doctrine and the tolling of the statute of limitations and (2) abused its discretion in denying her motion to reargue. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In May, 2007, the plaintiff's then husband, Charles L. Ill III initiated a dissolution action, and, in June, 2007, the plaintiff hired the defendant to represent her. The dissolution court issued a memorandum of decision on August 19, 2008, dissolving the marriage between the plaintiff and Ill. See *Ill* v. *Manzo-Ill*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-07-4011753-S (August 19, 2008).

On May 20, 2013, the plaintiff delivered the writ of summons and complaint to a state marshal, who made service on the defendant on June 10, 2013.[3] The operative complaint, dated August 28, 2014, set forth two causes of action against the defendant: legal malpractice[4] and fraudulent misrepresentation.[5] Generally, the complaint alleged that the attorneys of the defendant law firm had "deviated from accepted professional standards directly causing [the plaintiff] to lose millions of dollars in what would have been her share of undiscovered marital assets. Worse yet, [the plaintiff] paid the [defendant] tens of thousands of dollars in legal fees and expenses for this deficient representation." Specifically, the complaint alleged that the defendant (1) was negligent in failing to conduct financial discovery as to the former employers of Ill, (2) was negligent and committed fraud with respect to Ill's testamentary interests, (3) was negligent during the dissolution trial and (4) was negligent during the posttrial proceedings.

On November 10, 2014, the defendant filed an answer and raised a statute of limitations defense, pursuant to § 52-577, as to both counts of the operative complaint. Approximately one month later, the defendant moved for summary judgment on the basis that the plaintiff's action was time barred. In its motion, the defendant argued that it had been replaced as the plaintiff's counsel on March 11, 2010, when the law firm of Tibbetts, Keating & Butler, LLC (successor counsel) filed an "in

lieu of'' appearance on behalf of the plaintiff. It further maintained that because the process initiating the present action was not delivered to the state marshal until May 20, 2013, and was not served on the defendant until June 10, 2013, more than three years after the defendant had been replaced by successor counsel, it was entitled to summary judgment. The defendant also argued that the continuous representation doctrine did not apply to this matter.

On January 29, 2015, the plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment. She argued that the defendant had performed legal services after May 20, 2010, and, therefore, her action was not barred by the statute of limitations. In support of her opposition, the plaintiff directed the court to the defendant's invoices indicating that legal work had been done on behalf of the plaintiff on May 20 and September 1, 2010. The plaintiff also argued that the continuous representation doctrine served to toll[6] § 52-577.

The court, *Povodator, J.*, issued a memorandum of decision denying the defendant's motion for summary judgment on April 28, 2015. Specifically, the court reasoned that the post-May 20, 2010 invoice and the parties' competing explanations thereof could not be resolved in the context of a motion for summary judgment.

On February 29, 2016, the defendant moved to bifurcate the trial pursuant to General Statutes § 52-205 and Practice Book § 15-1 so that its statute of limitations defense would be considered before the merits of the plaintiff's operative complaint. Over the plaintiff's objection, the court granted the motion to bifurcate on March 7, 2016.

The court conducted a three day trial on the defendant's statute of limitations defense on March 29, April 15 and July 6, 2016. On the first day, the defendant presented testimony from Paul Tusch, the attorney who represented Ill in the dissolution action; John P. Ekberg III, an attorney with the defendant from November, 1999 until April, 2012; and Aidan Welsh, an attorney with the defendant since 2006. At the conclusion of the testimony from the three witnesses, the defendant rested as to the issue of the statute of limitations. On April 15, 2016, the plaintiff was the only witness to testify. On July 6, 2016, the plaintiff presented testimony from Timothy Butler, an attorney with successor counsel, and recalled herself to testify.

On March 7, 2017, the court issued its memorandum of decision.[7] It found that in January, 2010, Attorney Samuel V. Schoonmaker III,[8] the attorney and partner at the defendant who had primary responsibility for representing the plaintiff in the dissolution action, wrote to her confirming his plan to retire, effective April 1, 2010. "In that letter, [Schoonmaker] further indicated

that he did not wish to refer the file to someone else in his office. This was understood by the plaintiff to reflect the need for retention of new counsel, which she did obtain in March of 2010." Successor counsel filed an appearance in lieu of the defendant on March 11, 2010.

The court addressed the evidence of conversations between Schoonmaker and the plaintiff and successor counsel in the spring and summer of 2010. The court found that the thrust of Schoonmaker's post-May, 2010 conversations with the plaintiff related to her outstanding bill with the defendant. It further observed that other aspects of the case likely were discussed but were not the primary reason for the communications. "With respect to the testimony of successor counsel relating to discussion he had with . . . Schoonmaker relating to the handling of the case, there is no affirmative evidence refuting that testimony. There is a negative inference available, however—while . . . Schoonmaker documented (in time records) his bill related conversations with the plaintiff (for which no charge was ever imposed), whatever discussions he may have had with successor counsel did not warrant any time record entries at all, with or without an associated fee for services."

The court also considered the evidence that the defendant had billed the plaintiff for services in late May, 2010, "including preparation of certain documents and legal research. The defendant did not dispute that on or about May 20, 2010, an attorney from the defendant . . . did, in fact, prepare an affidavit for use in connection [with] the marriage dissolution action (specifically in connection with a motion to open judgment), but disputed its value as probative of ongoing representation, emphasizing that it was purely factual in nature and intended for use by successor counsel."

The court noted the billing entry detailing a conversation between Schoonmaker and Tusch, Ill's attorney, that had occurred on September 1, 2010. "It reflects a conversation . . . concerning settlement. The testimony of successor counsel suggests that such a telephone call did occur—he testified that there had been problems with a payment from [Ill]; Mr. Schoonmaker said he would call [Tusch]; and payment was made shortly thereafter." Tusch testified, however, that such a telephone conversation did not occur. Ultimately, the court found that Schoonmaker did speak with Tusch on September 1, 2010, "but the purpose of the call was not to discuss anything of a substantive nature but, rather, was likely to have been an informal call concerning a long overdue payment, sufficiently informal that . . . Tusch likely saw no need to memorialize the conversation in his time and billing records."

In November, 2010, the plaintiff sent a letter to Schoonmaker questioning some of the items contained

in the defendant's invoice. Specifically, she wrote: "The second item in question which makes me suspect that there exists an error is that the invoice indicates that you have signed an affidavit on [May 20, 2010] which was signed and e-mailed to [an attorney employed by successor counsel]. On [May 20, 2010, the defendant] was no longer representing me given your January, 2010 letter to me in which you indicated that you would be retiring from your firm effective [April 1, 2010]. Your letter also indicated that you couldn't advise that other partners in your firm take on my case for the reason that so much had transpired in the case and the learning curve was too deep. As you're aware, I reacted as quickly as possible to your news and secured and retained alternate representation . . . to assume my case. [Successor counsel was] representing me in May, 2010. As a result, I am unclear as to why you would have signed an affidavit relative to my case in May, 2010 and thus, suspect a slight billing error."

The court ultimately found that the statute of limitations had not been tolled by the continuous representation doctrine. The court determined that the defendant's appearance was withdrawn by operation of law pursuant to Practice Book § 3-9[9] following the appearance filed by successor counsel on March 11, 2010. It further concluded that "the representation by the defendant was not continuous but, rather, changed materially, effective no later than March 11, 2010. Effective that date, the defendant no longer was counsel of record in the pending litigation; the defendant no longer was 'the' legal advisor for the plaintiff. Instead, at most, the defendant as personified by . . . Schoonmaker was assisting successor counsel, providing advice to the plaintiff and/or new counsel. Absent an appearance in the pending litigation, it does not seem he had the ability to rectify anything, without reliance on successor counsel."

The court then specifically addressed the plaintiff's arguments regarding the applicability of the continuing representation doctrine. First, it set forth fifteen billing entries, post-March 11, 2010, on which the plaintiff had relied for the claim of continuous representation.[10] It then determined that most of these entries had "no apparent possible 'substantive' quality" and that, during the transition from the defendant to successor counsel, "there would be some level of communication . . . ." (Citation omitted.)

The court accepted the defendant's explanation for the May, 2010 entries for fees associated with a legal research database as costs that had been incurred in the prior months. The court further found that, with respect to the fees charged to the plaintiff for the preparation of an affidavit, such charges were made in error by the defendant.[11]

With respect to Schoonmaker's interactions with suc-

cessor counsel, the court determined that such conversations were informal in nature and constituted a blend of professional courtesy and ensuring an efficient transition from the defendant to successor counsel. Turning to the September 1, 2010 billing entry and the plaintiff's claim that Schoonmaker had engaged in settlement conversations with Tusch, the court found that this interaction "appears to have been a relatively ministerial issue of compliance with an existing settlement [specifically, the payment of money by Ill to the plaintiff] rather than working toward achieving a new settlement."

The court concluded that the defendant had met its burden of proving that its representation of the plaintiff ended on March 11, 2010, and, thus, the burden shifted to the plaintiff to establish that the continuing representation doctrine tolled the statute of limitations. It further found that the plaintiff had not proven by a preponderance of the evidence "that there had been continuous representation by [the] defendant extending to (or beyond) May 20, 2010, three years prior to the date on which a marshal was given process for serving on the intended defendants, the event which would have stopped the running of the statute of limitations under General Statutes § 52-593a. The action was not commenced within three years of the last act giving rise to the claimed legal malpractice and claimed misrepresentation, and the absence of an applicable basis for tolling requires the court to conclude that this action is barred by the statute of limitations."

On April 17, 2017, the plaintiff filed a motion to reargue pursuant to Practice Book § 11-11. She argued that the trial court had failed to take judicial notice of the appearance filed by the defendant in the appeal of the dissolution action. She claimed that the appellate appearance for that appeal, which had been filed on October 23, 2008, and had not been withdrawn until June 9, 2010, should have been part of the court's consideration of her continuous representation argument. The plaintiff also requested that the court consider certain billing records that had been part of the summary judgment proceedings. The defendant filed an objection to the motion to reargue. The court denied the plaintiff's motion to reargue on April 27, 2017.[12] This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court misapplied the holding of our Supreme Court in *DeLeo* v. *Nusbaum*, supra, 263 Conn. 588, regarding the continuous representation doctrine and the tolling of the statute of limitations. Specifically, she argues that the court erroneously expanded the *DeLeo* rule with respect to the issue of whether the attorney-client relationship had ended. The defendant counters that the court properly interpreted and applied the principles of *DeLeo*. We agree with the defendant.

At the outset, we identify our standard of review. In *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 715, 145 A.3d 292, cert. denied, 323 Conn. 930, 150 A.3d 231 (2016), we stated that the question "of whether a party engaged in a continuing course of conduct that tolled the statute of limitations is a mixed question of law and fact." (Internal quotation marks omitted.) Under that standard of review, "we defer to any factual findings and credibility determinations made by the trial court, but we review the legal import of those findings de novo." *Jones* v. *State*, 328 Conn. 84, 101, 177 A.3d 534 (2018).

Our analysis begins with an examination of our Supreme Court's seminal decision in *DeLeo* in which the plaintiff filed an action against the defendants, the attorney and the law firm that previously had represented him in a dissolution action.[13] *DeLeo* v. *Nusbaum*, supra, 263 Conn. 589. He alleged that twelve acts or omissions by the defendants constituted negligence. Id., 590. The defendants filed an answer denying the plaintiff's allegations and raised a statute of limitations special defense. Id.

At the conclusion of the plaintiff's case, the defendants moved for a directed verdict, arguing that the statute of limitations barred the action. Id. With respect to the plaintiff's continuous representation doctrine claim, the trial court, operating without the benefit of any appellate authority, assumed that this doctrine was akin to the course of treatment rule in medical malpractice actions. Id., 591. The trial court determined that the attorney-client relationship had broken down irretrievably as a result of a June 22, 1993 letter the defendant sent to his wife stating: "[I]ncident[al]ly, you[r] lawyers have not only committed malpractice in handling this case but are guilty of billing fraud and [*m*]*y lawyer has not done much better*." (Emphasis added; internal quotation marks omitted.) Id., 592. Ultimately, the trial court concluded that the jury could not have found that a continuing attorney-client relationship between the parties existed three years prior to the commencement of the action sufficient to toll the statute of limitations and directed a verdict in favor of the defendants. Id., 593.

On appeal, the Supreme Court first noted that although the trial court did not have the benefit of any Connecticut appellate authority adopting the continuous representation doctrine, the doctrine had "widespread support in other states." Id., 593–94. It further observed that in the interim between the trial court's decision and our Supreme Court's opinion, this court had recognized the continuous representation doctrine in *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 166, 795 A.2d 572 (2002). *DeLeo* v. *Nusbaum*, supra, 263 Conn. 594. It then endorsed seven rationales, five of which had been listed

in *Rosenfield*, for adopting the continuous representation doctrine.[14] Id., 594–96. It remained mindful, however, of the purposes of statutes of limitations.[15] Id., 596. Ultimately, our Supreme Court joined "the majority of states that have adopted the continuous representation doctrine. . . . Under the rule we adopt today, a plaintiff may invoke the doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Citation omitted; emphasis in original; footnotes omitted.) Id., 597.

Our Supreme Court then provided further guidance with respect to the doctrine. "With regard to the first prong, we conclude that the representation continues for the purposes of the continuous representation doctrine until either the formal or the de facto termination of the attorney-client relationship. The formal termination of the relationship occurs when the attorney is discharged by the client, the matter for which the attorney was hired comes to a conclusion, or a court grants the attorney's motion to withdraw from the representation. A de facto termination occurs if the client takes a step that unequivocally indicates that he has ceased relying on his attorney's professional judgment in protecting his legal interests, such as hiring a second attorney to consider a possible malpractice claim or filing a grievance against the attorney. Once such a step has been taken, representation may not be said to continue for purposes of the continuous representation doctrine. A client who has taken such a concrete step may not invoke this doctrine, because such actions clearly indicate that the client no longer is relying on his attorney's professional judgment but instead intentionally has adopted a clearly adversarial relationship toward the attorney. Thus, once *such a step has been taken*, representation does not continue for purposes of the continuous representation doctrine." (Emphasis added; footnotes omitted.) Id., 597–98.

The court emphasized the need for a clear standard for determining when an attorney-client relationship ends by way of formal or de facto termination and, thus, rejected the factor based approach that the trial court had employed. Id., 598–99. Under the facts of *DeLeo*, our Supreme Court concluded that there had not been a termination of the attorney-client relationship. Specifically, it determined that the letter from the plaintiff to his wife, stating that "you[r] lawyers have not only committed malpractice in handling this case but are guilty of billing fraud, and [m]y lawyer has not done much better" did not rise to the level of an unequivocal indication that the plaintiff had ceased relying on his attorney's professional judgment in protecting his legal

interests. (Internal quotation marks omitted.) Id., 600. It then reversed the judgment and remanded the case for consideration of the second prong of the continuous representation doctrine and whether the plaintiff's action was barred by the statute of limitations. Id., 600–601.

*DeLeo* clearly established that the continuous representation doctrine does not apply following the termination of the attorney-client relationship. Id., 597, 599; see also *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, supra, 167 Conn. App. 719. The plaintiff argues that the specific methods listed in *DeLeo* constitute the only valid methods to terminate an attorney-client relationship in establishing the first prong of the continuous representation doctrine. The plaintiff reads *DeLeo* too narrowly. As our Supreme Court established, the first prong of the continuous representation doctrine is whether the attorney continued to represent the plaintiff with regard to the same underlying matter. Id., 597. The court then identified the two types of termination, formal and de facto. Id. It did not, however, limit the methods to effectuate the termination of the representation to the few examples provided. Instead, our Supreme Court instructed that the key issue is whether, under a formal or de facto termination, the relationship between the attorney and client had ended. Id., 600.

In the present case, Schoonmaker, by a January, 2010 letter, notified the plaintiff of his intention to retire from the practice of law, effective April 1, 2010. On March 11, 2010, successor counsel filed an in lieu of appearance on behalf of the plaintiff pursuant to Practice Book § 3-8.[16] Pursuant to our rules of practice, the appearance of the defendant was deemed to have been withdrawn. See Practice Book (2010) § 3-9 (a). One Superior Court judge has concluded that the filing of an in lieu of appearance by another law firm acts to terminate the attorney-client relationship for the purposes of the continuous representation doctrine. In *Windels* v. *Hart Investment Properties*, Superior Court, judicial district of Fairfield, Docket No. CV-08-5019114-S (February 1, 2010) (49 Conn. L. Rptr. 354), the defendant attorney moved for summary judgment on the basis of the statute of limitations. He argued that the filing of an in lieu of appearance by another law firm "operated as a withdrawal" of his appearance. The court, *Arnold, J.*, agreed, concluding that the defendant's appearance was deemed withdrawn by operation of Practice Book §§ 3-8 and 3-9. Id. We find *Windels* persuasive.

We find additional support for our conclusion in the authors' commentary in the Connecticut Practice Series: Connecticut Superior Court Civil Rules. Specifically, the commentary to § 3-9 recognized that "[i]f new counsel has appeared in lieu of the initial counsel, a

motion to withdraw is not required." W. Horton et al., 1 Connecticut Practice Series: Connecticut Superior Court Civil Rules (2017–2018 Ed.) § 3-9, authors' comments, p. 369.[17]

In addition to the precepts of *DeLeo*, the plain language of the relevant rules of practice, the reasoning in *Windels*, and the authors' commentary in the Connecticut Practice Series guide our conclusion that the attorney-client relationship between the plaintiff and the defendant had ended in March, 2010. This result is further buttressed by the trial court's finding that Schoonmaker had informed the plaintiff of his plan to retire from the practice of law, effective April 1, 2010. He confirmed his intention by letter to the plaintiff dated January 13, 2010. The plaintiff subsequently sent Schoonmaker a letter in November, 2010, in which she questioned a May 20, 2010 billing entry. Specifically, she wrote: "*On* [*May 20, 2010, the defendant*] *was no longer representing me*, given your January, 2010 letter to me . . . . Your letter also indicated that you couldn't advise that other partners in your firm take on my case for the reason that so much had transpired in the case and the learning curve was too deep. As you're aware, I reacted as quickly as possible to your news and secured and *retained alternate representation*— [successor counsel]—to assume my case. [*Successor counsel was*] *representing me in May 2010*." (Emphasis added.)

We agree with the conclusion of the trial court that the events of this case implicate aspects of both a formal and a de facto termination in applying the continuous representation doctrine. The filing of the in lieu of appearance by successor counsel signified the termination of the defendant's representation of the plaintiff. Moreover, the plaintiff acknowledged the end of this attorney-client relationship, as evidenced by her November, 2010 letter to Schoonmaker questioning certain charges on her bill and specifically noting that the defendant no longer represented her. The letter also demonstrates that the plaintiff had hired successor counsel and no longer relied on the professional judgment of the defendant's attorneys to protect her legal interests. In short, we agree with the trial court that the evidence established that the attorney-client relationship between the plaintiff and the defendant terminated in March, 2010, thereby precluding the tolling of the statute of limitations through the doctrine of continuous representation after that date.[18] As the plaintiff failed to commence her action within three years from that date, we conclude that the court properly determined that her action was barred by the statute of limitations.

## II

The plaintiff next claims that the court improperly denied her motion to reargue, filed pursuant to Practice

Book § 11-11. Specifically, she argues that the court erred in failing to take judicial notice of the defendant's appearance in the appeal in the dissolution action. The defendant counters that the court properly denied the motion to reargue, as the plaintiff "was improperly using the vehicle of a motion to reargue in an attempt to reopen the trial record and admit new evidence [that] the [p]laintiff could have offered during the trial but did not." We agree with the defendant.

The following additional facts inform the resolution of this claim. On April 17, 2017, the plaintiff filed a motion to reargue, claiming that the trial court's memorandum of decision had failed to "take into account a crucial piece of factual evidence from the [c]ourt's own records, which the [c]ourt could have taken judicial notice of when making [its] decision." The plaintiff pointed to the fact that the defendant had an appearance in the appeal taken by Ill from the dissolution judgment. She further contended that this evidence established that the defendant's representation had not ended in March, 2010, but, rather, continued until June 9, 2010, the date the appeal was withdrawn, and, therefore, she had commenced her action within the three year statute of limitations.

In its objection, filed April 27, 2017, the defendant argued that the plaintiff had not requested the trial court to take judicial notice of the appearance in the dissolution appeal. It further contended that the plaintiff's efforts amounted to nothing more than "an attempt to get a second bite of the apple." In denying the plaintiff's motion, the court, inter alia, agreed with the defendant that a motion to reargue did not afford a party the opportunity to "augment the record after receiving an unfavorable result on the record as presented during the trial."

We begin by setting forth our standard of review and the relevant legal principles. "The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . . The purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] *motion to reargue* [*however*] *is not to be used as an opportunity to have a second bite of the apple* . . . ." (Emphasis added; internal quotation marks omitted.) *Seaport Capital Partners, LLC* v. *Speer*, 177 Conn. App. 1, 16–17, 171 A.3d 472 (2017); see also *Hudson Valley Bank* v. *Kissel*, 303 Conn. 614, 624, 35 A.3d 260 (2012).

Here, the plaintiff claimed that the court erred in failing to take judicial notice of the defendant's automatic appearance[19] in the dissolution appeal. The plaintiff, however, failed to raise this matter during the trial and, instead, brought it to the court's attention, for the first time, after a decision had been rendered. Thus, she did not identify a principle of law or fact that the court had been presented with *at trial*. Instead, she sought a second opportunity to litigate her claim regarding the applicability of the continuous representation doctrine. In such circumstances, we decline to conclude that the court abused its discretion in denying the motion to reargue. See *Mengwall* v. *Rutkowski*, 152 Conn. App. 459, 466, 102 A.3d 710 (2014) (trial court did not abuse discretion denying motion to reargue where movant offered only arguments available at time of original argument on motion to dismiss); *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 843–44, 59 A.3d 247 (court properly denied motion to reargue where movant had presented numerous exhibits to court for first time even though exhibits previously had been available to the movant at trial and thus were not newly discovered evidence), cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013) (appeal withdrawn November 26, 2014); see, e.g., *Lynch* v. *Lynch*, 153 Conn. App. 208, 244–45, 100 A.3d 968 (2014) (no abuse of discretion in denying motion to reargue where movant did not ask court to consider overlooked legal authority or claim or to reconsider misapprehended fact but, instead, sought reevaluation of facts), cert. denied, 315 Conn. 923, 108 A.3d 1124, cert. denied, U.S. , 136 S. Ct. 68, 193 L. Ed. 2d 66 (2015). Accordingly, we conclude that the court did not abuse its discretion in denying the plaintiff's motion to reargue.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff initially commenced this action against attorneys Samuel V. Schoonmaker III and John P. Ekberg III, and the law firm of Schoonmaker, George & Blomberg, P.C. On March 28, 2014, the court granted in part the defendants' motion to dismiss and dismissed the action as to the individual attorneys for lack of personal jurisdiction due to improper service of process. The plaintiff has not challenged that ruling in this appeal. Thus, we refer to the law firm as the defendant in this opinion.

[2] Both a legal malpractice action and a fraudulent misrepresentation action are subject to the three year statute of limitations set forth in § 52-577. *Straw Pond Associates*, *LLC* v. *Fitzpatrick*, *Mariano & Santos*, *P.C.*, 167 Conn. App. 691, 714, 145 A.3d 292, cert. denied, 323 Conn. 930, 150 A.3d 231 (2016) (legal malpractice); *Bridgeport Harbour Place I*, *LLC* v. *Ganim*, 131 Conn. App. 99, 175 n.85, 30 A.3d 703 (fraudulent misrepresentation), cert. granted on other grounds, 303 Conn. 904, 31 A.3d 1179 (2011) (appeal withdrawn January 27, 2012), and cert. granted on other grounds, 303 Conn. 905, 31 A.3d 1180 (2011) (appeal withdrawn January 26, 2012).

"Section 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . [Section] 52-577 provides: No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of. This court has determined that [§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act

or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations . . . § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) *Piteo* v. *Gottier*, 112 Conn. App. 441, 445, 963 A.2d 83 (2009); see also *Farnsworth* v. *O'Doherty*, 85 Conn. App. 145, 148–50, 856 A.2d 518 (2004).

[3] See General Statutes § 52-593a (a); *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 685, 986 A.2d 290 (2010) (service of process must be delivered to marshal for service prior to expiration of statute of limitations).

[4] "In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 157, 795 A.2d 572 (2002).

[5] "The essential elements of a cause of action in [fraudulent misrepresentation] are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." (Internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 522, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009).

[6] "Tolling does not enlarge the period in which to sue that is imposed by a statute of limitations, but it operates to suspend or interrupt its running while certain activity takes place." *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 311, 94 A.3d 553 (2014); see also *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 330, 77 A.3d 726 (2013).

[7] At the outset of its memorandum of decision, the court noted that although the plaintiff had filed a denial in response to the defendant's statute of limitations defense, Practice Book § 10-57 "requires that matter in avoidance of a defense be affirmatively stated, as opposed to a simple denial which would put the defendant to its proof of defense." The court further observed that "[w]hile the lack of an appropriate pleading cannot be ignored, neither can it be ignored that there is no element of surprise to the defendant—at all times, the defendant has been on notice that this was an issue in the case, even if not properly pleaded . . . ." See also *Cruz* v. *Schoenhorn*, 188 Conn. App. 208, 212 n.5,      A.3d      (2019); cf. *Grimes* v. *Stutman*, Superior Court, judicial district of Middlesex, Docket No. CV-04-4000108-S (December 22, 2005) (plaintiff failed to properly raise continuous representation doctrine in reply to statute of limitations defense).

[8] The court noted that Schoonmaker had "passed away during the pendency of these proceeding [and] could not refute the testimony presented in court . . . ."

[9] Practice Book (2010) § 3-9 (a) provided: "An attorney or party whose appearance has been filed shall be deemed to have withdrawn such appearance upon failure to file a written objection within ten days after written notice has been given or mailed to such attorney or party that a new appearance has been filed in place of the appearance of such attorney or party in accordance with Section 3-8."

The current version of Practice Book § 3-9 (a) does not contain the ten day time period to file a written objection. We note that one Superior Court judge has concluded that the automatic withdrawal of an attorney provision in the prior version of this rule of practice did not become effective until the expiration of that ten day period. See *Windels* v. *Hart Investment Properties*, Superior Court, judicial district of Fairfield, Docket No. CV-08-5019114-S (February 1, 2010) (49 Conn. L. Rptr. 354). For the purposes of this appeal, we need not address or consider the impact of the ten day provision, as it was not raised by the parties and does not affect our analysis or the outcome of this appeal.

[10] Specifically, the plaintiff had relied on the following fifteen billing items.

"1. March 26, 2010 entry for a telephone conversation with successor counsel 're: transition of file.'

"2. May 20, 2010 entry for telephone call with successor counsel, review

of file, conference with 'SGY' re: affidavit and e-mail to successor counsel

"3. May 21, 2010 entry for telephone call with, and letter to, successor counsel

"4. May 24, 2010 entry for telephone message to and from successor counsel (indication of 'no charge')

"5. without a specific date, the May 31, 2010 invoice contained a billing for Westlaw research

"6. July 11, 2010 telephone conference with plaintiff 're: payment of her bill' and internal telephone conference and memo relating to status of payment (indication of 'no charge')

"7. September 1, 2010 telephone conference with attorney Tusch (counsel representing [Ill]) 're: status settlement.' (indication of 'no charge')

"8. October 25, 2010 telephone conference with plaintiff concerning her bill (indication of 'no charge')

"9. October 26, 2010 telephone conference with plaintiff concerning her bill (indication of 'no charge')

"10. October 27, 2010 telephone conference with plaintiff concerning her bill (indication of 'no charge')

"11. October 31, 2010 entry: 'Telephone call from [plaintiff]. She is sending a check and we are sending her the escrow money.' (indication of 'no charge')

"12. November 18, 2010 call to the plaintiff concerning her bill—'she said she would pay right away.' (indication of 'no charge')

"13. November 30, 2010 entry for receipt of payment of $17,908

"14. without a specific date, the January 31, 2011 invoice reflected a charge for 'outsourced photocopying'

"15. June 30, 2011 entry indicating 'write off' of the then existing balance of $847.22." (Footnote omitted.)

[11] The court explained: "Activity in May was shortly after there had been a transition to successor counsel by the plaintiff, and shortly after there had been the retirement from active participation in the [defendant] by . . . Schoonmaker. As reflected by the numerous time entries for telephone conferences with the plaintiff related to billing, the presumptive practice in the [defendant] was to record time entries whether or not there was an associated charge for time, so it was not unreasonable for there to have been erroneous billing (in the sense of charging for time) for the time spent on the file in May. What makes the claim of mistake persuasive is that this was not a self-serving change in position after litigation had been commenced; it was a response to the plaintiff's own letter challenging the billing, claiming it must have been a mistake in light of the cessation of representation, prior to May of 2010. And the defendant agreed, eventually writing off not only the charges associated with the affidavit itself, but also the charges for [the legal research database] and also the charges for copying of the file in January of 2011."

[12] The court concluded: "The plaintiff has not identified a principle of law missed or misapplied; she has not identified a misapprehension of facts; she has not identified any inconsistencies; and she has not identified any other basis on which the court should revisit its earlier decision. The motion therefore must be denied."

[13] Our Supreme Court limited the holding of *DeLeo* to "cases in which an attorney is alleged to have committed malpractice during the course of litigation." *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597 n.4.

[14] Specifically, our Supreme Court noted that (1) the continuing course of conduct and continuous treatment doctrines, both of which are similar to the continuing representation doctrine, are permitted in Connecticut, (2) requiring a client to bring a malpractice action prior to the termination of the attorney-client relationship would encourage the second-guessing of the attorney and force the client to obtain other legal opinions regarding the attorney's handling of the case, (3) a client could be forced into adopting inherently different litigation postures by both defending the attorney's actions in the appeal while also challenging those actions in a separate malpractice action, (4) the dangers of an extended time period to bring a malpractice action are lessened as a result of the memorialization of conduct in legal pleadings and hearing transcripts, (5) the doctrine prevents an attorney from postponing the inevitable event of defeat beyond the limitation period to protect against liability for his actions, (6) a client has the right to have confidence in his or her attorney's professional abilities and cannot be expected to question and assess the attorney's legal skills and (7) the doctrine furthers the goal of affording the attorney the opportunity to correct, avoid or mitigate the consequences of an apparent error. *DeLeo* v. *Nusbaum*, supra, 263 Conn. 594–96.

[15] "A statute of limitations or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) *DeLeo* v. *Nusbaum*, supra, 263 Conn. 596.

[16] Practice Book (2010) § 3-8 provided in relevant part: "Whenever an attorney files an appearance for a party . . . and there is already an appearance of an attorney . . . on file for that party, the attorney . . . filing the new appearance shall state thereon whether such an appearance is in place of or in addition to the appearance or appearances already on file. . . . Unless a written objection is filed within ten days after the filing of an in-lieu-of appearance, the appearance or appearances to be replaced by the new appearance shall be deemed to have been withdrawn . . . ."

[17] This commentary also notes that "[e]ffective January 1, 2017, a new appearance that is filed in lieu of an existing appearance is immediate. The amendment eliminates a prior 10-day delay for the filing of objections." W. Horton et al., 1 Connecticut Practice Series: Connecticut Superior Court Civil Rules, (2017–2018 Ed.) § 3-9, authors' comments, p. 369; see footnote 9 of this opinion.

[18] We are mindful of our Supreme Court's explicit directive for "clear legal standards" in applying the continuous representation doctrine. *DeLeo* v. *Nusbaum*, supra, 263 Conn. 596. "Both legislative policy and the interests of justice are furthered by the elimination of unnecessary uncertainty regarding the date upon which plaintiffs' claims are barred by the statute of limitations. In the absence of a clear standard, a plaintiff's reasonable understanding of the facts that determine the tolling period may result in the expiration of his claim if a fact finder subsequently disagrees and determines that the tolling period ended earlier than the plaintiff had supposed. A plaintiff who is uncertain as to whether the doctrine applies likely will feel compelled to institute an action against his attorney, for fear that a court or a jury ultimately will conclude that the statute is not tolled. In such a situation, one of the primary purposes of the doctrine, fostering and preserving the attorney-client relationship, will be compromised." Id.

Although the factual circumstances of the present case were not specifically mentioned in *DeLeo*, our analysis and conclusion encompass the crucial question of whether the defendant's representation of the plaintiff had ended in March, 2010.

[19] See Practice Book § 62-8 ("[c]ounsel of record for all parties appearing in the trial court at the time of the appellate filing shall be deemed to have appeared in the appeal").